**DOUVAS et al. v. NEWCOMB et al.**

No. 35644.

Supreme Court of Oklahoma.

Jan. 12, 1954.

Rehearing Denied March 2, 1954.

Wallace & Wallace, Collins & Moore, Sapulpa, for plaintiffs in error.

Young, Young & Young, Sapulpa, for defendants in error.

CORN, Justice.

The disposition to be made of this appeal does not require an extended statement of the issues presented by the pleadings, or of the factual situation reflected by the evidence adduced at the trial.

Defendants owned a brick building in the city of Sapulpa, Oklahoma. The principal portion of this building was leased to an Oklahoma corporation, which does not appear as an appealing defendant herein, for operation of what was known locally as the Loraine Hotel. The building also housed a private club, which leased its portion of the premises from defendants, and a restaurant or coffee shop which was operated by defendants. Adjoining defendants' building on the north was a brick building, the upper floor of which was so constructed as to provide apartment accomodations, one such apartment being occupied by plaintiffs herein.

Early in the morning of December 2, 1949, a fire occurred in defendants' building, and eventually spread to adjoining buildings, including that which contained plaintiffs' apartment. The fire was of such proportions all these buildings were destroyed, and as a result plaintiffs lost all of their household goods and personal effects.

Plaintiffs brought this action seeking to recover damages for their loss. The petition alleged defendants knowingly main-

tained the building in a hazardous condition by permitting the electrical wiring, appliances, fans and equipment to become dilapidated and conducive to fire; erecting and maintaining false ceilings conducive to an undetected spread of fire; permitting accumulation of combustible debris; installing, and maintaining an exhaust fan in proximity to combustible areas and permitting volatile grease to accumulate over the fan and in the flue; cutting a doorway through the firewall between the adjoining buildings and thereafter failing to install a firedoor; failure to warn plaintiffs of the fire and to notify the fire department promptly; permitting such hazardous conditions to exist despite warnings and orders from the State Fire Marshal to correct same; that plaintiffs' loss was the direct and proximate result of defendants' conduct in maintaining such hazardous conditions.

Defendants answered by general denial and plea of unavoidable casualty. Trial of the issues resulted in a jury verdict for plaintiffs, upon which the judgment herein appealed from was rendered.

During presentation of plaintiffs' case they were permitted to introduce in evidence the lease contract between the Anderson Hotels of Oklahoma, incorporated, and Nick Douvas, the defendant, except that reference therein made concerning insurance was deleted, and plaintiffs' request to read the contract to the jury was denied.

Plaintiffs formally offered in evidence plaintiffs' Exhibits 1-E, 1-F and 1-H, which were admitted over defendants' objections.

Exhibit 1-E purported to be a copy of a letter dated June 26, 1947, addressed to an attorney in Sapulpa, Oklahoma, and written in behalf of the Anderson Hotels System, by its attorney. The substance of this letter was that the terms of the lease contract required the defendant, (the lessor) to make changes, alterations and additions, or installations of safety devices which might be demanded by the public authorities during the lease term, at the lessor's expense; that the lessee expected defendant to rewire the hotel in accord-

ance with terms of the lease, to meet certain requirements of the State Fire Marshal. The exhibit introduced in evidence bore the seal of the Fire Marshal.

Exhibit 1-F was a copy of a letter addressed to defendant Douvas from the Anderson Hotels of Oklahoma, incorporated, by its attorney, dated September 16, 1947. The letter stated, in substance, that the writer had received a copy of a letter written September 15, 1947, by the Assistant Fire Marshal, stating that an official order was being served from the Fire Marshal's office making certain requirements respecting the Loraine Hotel. The lessee proposed to remedy immediately such conditions as were its responsibility, and directed attention to the requirements which were defendants' responsibility under the lease, and again called defendants' attention to the written lease contract. This Exhibit also bore the seal of the State Fire Marshal's office.

Exhibit 1-H was a copy of a letter purportedly written by the Fire Marshal as follows:

"July 14, 1948

"Nick Douvas & James Anderson

"Re: Lorane Hotel
"Sapulpa, Oklahoma

"Gentlemen:

"It has been reported to this office that only a part of the recommendations that were made in regard to the above captioned hotel have been completed. We are listing below the recommendations that have been made, and we will appreciate very much, information regarding your plans in completing these recommendations:

"Requirements No. 1. Repair all plaster where wood laths are exposed.

"Requirement No. 2. Building must be rewired by a licensed electrician, making it come up to the specifications of the City Code.

"Requirement No. 3. Clean up the basement, removing all combustible material.

"Requirement No. 4. Use metal cans with self-closing tops for the storage of all oil mops.

"We feel that we have been fair to all concerned, and are definitely asking that our recommendations be met at an early date, notifying this office when same have been completed. If we can be of further service to you, please let us know.

"Very truly yours
"M. G. Young
"State Fire Marshal

"MGY; dln
"C
"cc-Mgr. Lorane Hotel, Sapulpa, Okla."

At the close of plaintiffs' evidence the trial court sustained demurrers to the evidence entered by certain defendants. Upon presentation of defendants' evidence counsel for plaintiffs was permitted, over defendants' objection, to cross-examine defendant concerning these Exhibits. Thereafter in his closing argument plaintiffs' counsel made mention of the matters in the exhibits and was cautioned not to read all the exhibits to the jury. In response thereto counsel stated:

"I do not intend, ladies and gentlemen, to read all the exhibits, I merely want to call to your attention the effect of these exhibits. Starting in June, 1947, and clear up until almost the time of this fire, there were a series of letters written from the State Fire Marshal's office to Nick Douvas and Lorraine Douvas, telling them they were maintaining a fire hazard there in that building. Where is their evidence they ever corrected that condition? You can read the letters yourselves as to the condition. * * *"

Defendants urge the admission in evidence of the Exhibits above referred to was reversible error on the grounds same constituted hearsay evidence and were prejudicial to defendants case. However; attention is directed first to Exhibit 1-H, above quoted. Plaintiffs seek to justify the admission of such exhibit in evidence upon two grounds: (1) It was an independently relevant statement proving defendants' knowledge of existing hazards. (2) It was an official record kept by the

State Fire Marshal pursuant to statutory duty. Plaintiffs' most persuasive argument is based upon ground 2 and we direct consideration thereto since, if plaintiffs' position is sound, further consideration of the matter is unnecessary.

The basis of plaintiffs' argument may be outlined in the following manner. Our statute, 12 O.S.1951 § 502, provides that books and records required by law to be kept by public officers may be received in evidence in any court. The State Fire Marshal is a public officer who has the duty, imposed by statute, to inspect buildings and order dangerous conditions corrected. The statute, 74 O.S.1951 § 317, authorizes such officer to *order* buildings to be repaired or to be torn down. And, coupled with this section plaintiffs cite the provisions of 74 O.S.1951 § 314, concluding that such latter section defines the Fire Marshal's orders and reports to be public record.

As respects section 314, this section deals with the investigation of the origin, cause and circumstances of every fire occurring in every city, village, or town or county after occurrence of such fire, and requires the Fire Marshal to keep a record of all such fires, together with facts, statistics and circumstances, including origin of the fire, as determined by such investigation. The concluding portion of this section makes such records, i. e. records, of all fires, public records open to the public for inspection at all times. We are unable to see wherein this section of our statute can be said to support plaintiffs' theory that the Fire Marshal's letter became a public record, inasmuch as the provisions thereof plainly deal with records pertaining to *investigations conducted after the occurrence of a fire.*

This section (314) of our statute was the subject of consideration in Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568, 153 A.L.R. 156. Therein involved was the question as to the admissibility in evidence of a written report in the Fire Marshal's office concerning the origin of the fire in question. Although holding such report was a public document, that

court pointed out that it was so considered because it involved a written report required to be filed in the Fire Marshal's office, based upon investigation of every fire.

The language of Sec. 317 does provide for the Fire Marshal to order a defective building to be repaired or demolished. But, it further provides that the owner, lessee, etc. shall comply with such *order* within the time fixed therein; that an appeal may be taken within 10 days from date of service of the order, whereupon the Fire Marshal must fix a time and place for hearing such appeal, and after hearing may affirm, modify, revoke or vacate the *order*. This section then provides for appeal from the Fire Marshal's final order to the District Court, and further provides for execution of such court's final order. Consideration of the language of this section of the statute can result only in the conclusion that the *order* contemplated in such section is a formal order entered by the Fire Marshal in his official capacity by virtue of statutory authority.

Aside from whether the questioned exhibit was a *formal order* as the plain meaning of the statute contemplates, we are impressed with two matters which are revealed by the exhibits themselves. In Exhibit 1-F, the defendant is advised of a purported letter from the Fire Marshal's assistant, to the effect that he was serving an official *order* making certain requirements as to the correcting of conditions in defendants' building. Undoubtedly had such official order been served some record thereof would have been retained in the proper office and such would have become a public record. In such case a duly authenticated copy of such record would have been the best evidence, and these plaintiffs could have produced same for the purposes of the record under 12 O.S.1951 § 486. The absence thereof perhaps is best explained by the language of Exhibit 1-H (quoted heretofore) where, in both the opening and the closing paragraph the State Fire Marshal refers to "recommendations" previously made concerning defendants' building, again listed such recommendations, and asks information concerning plans for completing same, and closes by stating such "recommendations" definitely were expected to be met at an early date.

The statute provides that the State Fire Marshal *shall order* a defective building to be repaired, torn down or demolished. It is elementary that property cannot be taken without due process of law. The exercise of due process presupposes a legal act based upon a formal order of record. We know of no case holding that the "recommendations" of a public official voluntarily issued, even though pursuant to requirements of law, are formal *orders* contemplated by the statute.

To support the trial court's ruling herein plaintiffs rely upon our decisions in Arnold v. Board of Com'rs, 124 Okl. 42, 254 P. 31; and Hays v. State, 22 Okl.Cr. 99, 210 P. 728. The Arnold case, based upon the doctrine earlier announced in Hays v. State, supra, pointed out that the questioned evidence, i. e. official reports of the State Examiner & Inspector concerning books and accounts of county officers, are required by law to be kept by the county clerk, and by statute are privileged to be introduced as primary evidence.

Books and records required by law to be kept by designated public officers are admissible in evidence, 12 O.S. 1951 § 502, and properly authenticated copies thereof are equally admissible. However, we are of the opinion the language of those provisions cannot be extended to the point the questioned Exhibit can be considered a public record within the contemplation of the applicable statutes. A record cannot be denominated a public record within our understanding of the meaning of the term unless, being required to be kept, it is so recorded or filed that it may be subject to inspection by any person for information as to what it shows. In this jurisdiction we recognize that a record of primary facts made by a public officer in performance of his official duty is admissible as evidence of such facts. See Hadley v. Ross, 195 Okl. 89, 154 P.2d 939, and cases cited therein; Astle v. Olmstead, 199 Okl. 498, 187 P.2d

997. See also Banks v. Southern Potteries, Inc., Tenn.App., 204 S.W.2d 382, holding that generally records of investigations conducted by a public officer pursuant to requirements of law, and which involve exercise of judgment, expression of opinion and the drawing of conclusions, are not admissible as public records.

■ We decline to extend the recognized exception to the rule against admission of hearsay evidence to include instruments which, although they may have been kept by a public official in the course of his duties, were not explicitly required to be kept, were not formal orders issued pursuant to such official's statutory authority, and by the matters revealed therein appear to have been made voluntarily.

■ Plaintiffs also urge that admission in evidence of the questioned exhibit was only cumulative of other evidence, which was admitted without objection, and so was not prejudicial. They point out that three qualified witnesses testified concerning the defective electrical wiring and the generally hazardous condition of the premises, and that such matters had been brought to defendants' attention. Upon this basis they insist the exhibits merely were cumulative of the oral testimony, and the admission thereof did not constitute reversible error. See Kinkade v. Simpson, 200 Okl. 507, 197 P.2d 968.

Although we have determined that it was reversible error to admit exhibit 1-H in evidence over defendants' objections, in considering whether defendants were prejudiced by admission of such exhibit, it is appropriate to review the manner in which this was brought to the attention of the jury. The exhibits upon which plaintiffs relied covered a period of time in excess of two years preceding the fire. The most casual consideration of exhibit 1-H, when admitted in evidence, reflects that it absolutely advised the jury that defendants had continued to violate positive recommendations of the State Fire Marshal, and this was true although there was a lack of any evidence tending to establish that this officer had done anything more than to make certain "recommendations" relative to remedying existing conditions in defendants' building.

Additionally, the manner in which the presence of these exhibits in evidence was brought home to the jury is not to be approved. Undue emphasis was placed thereon by counsel advising the jury there was a "series of letters" from the State Fire Marshal to defendants. Not only were such remarks not a proper statement of the evidence as disclosed in the trial of the case, but such comment made it possible for the jury to draw the unwarranted inference that defendants deliberately had violated official recommendations theretofore issued over a long period. When these matters are considered in connection with the nature and contents of the inadmissable evidence which was before the jury, no other conclusion is possible than that such evidence was highly prejudicial to defendants' case.

■ We adhere to the rule that the erroneous admission of incompetent evidence will not warrant reversal of a judgment unless the court is satisfied from the whole record that a miscarriage of justice had resulted or some statutory or constitutional right of the complaining party has been violated. Upon review of the record we are convinced that substantial rights of these defendants were violated by the admission in evidence of this exhibit.

Judgment reversed and case remanded with directions to grant defendants a new trial.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON, WILLIAMS and BLACKBIRD JJ., concur.