STATE of Oklahoma ex rel. G. T. BLANK-
ENSHIP, Attorney General, Plaintiff,

v.

Harold FREEMAN, Chairman, Corporation
Commission of Oklahoma, Defendant.

STATE of Oklahoma ex rel. G. T. BLANK-
ENSHIP, Attorney General, Plaintiff,

v.

Ray C. JONES, Member, Corporation Com-
mission of Oklahoma, Defendant.

No. 42709.

Supreme Court of Oklahoma.

April 23, 1968.

746

G. T. Blankenship, Atty. Gen., of Oklahoma, Brian H. Upp, Asst. Atty. Gen. of Oklahoma, for plaintiff.

J. A. Rinehart, El Reno, D. E. Martin, Tulsa, W. D. Hart, Pauls Valley, for defendants.

IRWIN, Vice Chief Justice.

Harold Freeman and Ray C. Jones are presently serving as members of the Corporation Commission of Oklahoma. In an original proceeding, in the nature of quo warranto, filed in this Court, No. 42,709, the Attorney General of the State of Oklahoma, with the consent of the Governor of Oklahoma, seeks a judicial determination that certain acts committed by Harold Freeman, while a member of the Corporation Commission, constitute a forfeiture or vacation of his office as Corporation Commissioner. In an original proceeding, in the nature of quo warranto, filed in this Court, No. 42,710, the Attorney General of the State of Oklahoma, with the consent of the Governor of Oklahoma, seeks a judicial determination that certain acts committed by Ray C. Jones, while a member of the Corporation Commission, constitute a forfeiture or vacation of his office as Corporation Commissioner.

We will refer to the Attorney General as State, and Harold Freeman and Ray C. Jones as defendants unless otherwise specifically named.

State alleged four separate counts against each defendant. Two counts are based upon alleged violations of their constitutional oaths of office as prescribed by Article XV, § 1, of the Constitution; and two counts are based upon allegations that they had become interested in the stock or earnings of certain companies and had become engaged in occupations or businesses incon-

sistent with their duties as Corporation Commissioners, in violation of Article IX, § 16, of the Constitution.

Since the acts allegedly committed by both defendants are substantially the same in both proceedings, the two cases are consolidated as Case No. 42,709.

In separate answers filed by each defendant, both recognize that the allegations set forth in State's pleadings are public juris and of state wide concern. Both defendants join State in requesting this Court to assume original jurisdiction in both proceedings and judicially determine the issues presented.

■ We accept jurisdiction and are of the opinion that if a Corporation Commissioner shall have done any act, which under our Constitution, shall constitute a forfeiture or vacation of his office, this Court, under the authority of Article VII, § 4, of the Constitution, and Title 12 O.S.1961, Sections 1531 and 1532, has jurisdiction of an action in the nature of quo warranto and the power to make a judicial determination that such officer has forfeited or vacated his office.

In State's pleadings it is stated that these proceedings are based solely upon evidence gathered by the Senate Investigating Committee authorized by the Legislature of the State of Oklahoma, Senate Resolution No. 30, and House Joint Resolution No. 514, and no new evidence will be offered which has not already been presented under oath to the Senate Investigating Committee.

A transcript of the evidence gathered by the Senate Investigating Committee has not been filed in these proceedings and defendants challenge the admissibility of such transcript. As will be hereinafter shown, even if such transcript were filed, this Court may not, through the medium of judicial notice, accept as evidence on the contested fact issues presented, any adjudicative facts either elicited or predetermined by the Senate Investigating Committee. However, in view of the nature of these proceedings and defendants' request that we assume original jurisdiction and render a decision herein, we will proceed to determine the legal issues presented by State's pleadings and defendants' answers.

One of the preliminary issues presented is whether or not Corporation Commissioners are liable and subject to impeachment. State contends they are not and defendants contend they are. This issue and State's allegations and defendants' answers, place in issue certain basic questions. For clarification, we will consider and determine the issues presented under separate propositions and when pertinent, we will set forth the material allegations of State's Pleadings.

PROPOSITION I

ARE CORPORATION COMMISSIONERS LIABLE AND SUBJECT TO IMPEACHMENT? Our answer is YES.

Article VIII, § 1, of the Constitution as amended on May 3, 1966, provides:

> "The Governor, and *other elective State officers,* including the Justices of the Supreme Court, shall be liable and subject to impeachment for wilful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude committed while in office. * * *." (emphasis ours)

The other portions of the above section, which was the amendatory portion, are not pertinent in determining the issue under consideration.

Article VIII, § 2, provides:

> "All elective officers, not liable to impeachment, shall be subject to removal from office in such manner and for such causes as may be provided by law."

State argues that under the authority of Maben v. Rosser, 24 Okl. 588, 103 P. 674, "other elective state officers", as used in § 1, supra, is limited to "other elective state *executive* officers."

State further argues that Article VI, § 1, Okla.Const., specifies who are the elective state executive officers of Oklahoma and

that Corporation Commissioners are not included. Section I, supra, provides:

"The Executive authority of the State shall be vested in a Governor, Lieutenant Governor, Secretary of State, State Auditor, Attorney General, State Treasurer, Superintendent of Public Instruction, State Examiner and Inspector, Chief Mine Inspector, Commissioner of Labor, Commissioner of Charities and Corrections, Commissioner of Insurance, and *other officers provided by law and this Constitution,* * * *." (emphasis ours)

Defendants argue that the provisions of Article VIII, § 1, supra, includes Corporation Commissioners, although not specifically named as they are included as an executive officer in Article VI, § 1, supra, by the language "and other officers provided by law and this Constitution."

Defendants also point out that Corporation Commissioners are listed with State Executive Officers in § 15 of the Schedule to the Constitution relating to compensation.

In determining whether Corporation Commissioners are liable and subject to impeachment, unless they are, they are the only State Officers who are elected by the qualified voters of the entire State and whose offices were created by the original Constitution who are not subject to impeachment. Our views are premised upon the following reasons.

Every State Officer specifically mentioned in Article VI, § 1, supra, is elected by the qualified voters of the entire State. The language, "and other officers provided by law and this Constitution", clearly discloses that the executive authority of the State would not necessarily be limited to those State Officers specifically named. The only other State Officers not mentioned therein who are elected by the qualified voters of the entire State and whose offices were created by the original Constitution were the Justices of the Supreme Court, the Clerk of the Supreme Court and members of the Corporation Commission.

Justices of the Supreme Court are named specifically as being liable and subject to impeachment. Although the duties of the Clerk of the Supreme Court may be performed within the framework of the judicial department, he is in fact an executive officer (see 10 Am.Jur. Clerk of Courts, Sections 14, 15, and 16) and subject to impeachment. Therefore, unless Corporation Commissioners are liable and subject to impeachment, they are the only State Officers who are elected by the qualified voters of the entire State and whose offices were created by the original Constitution who are not subject to impeachment.

This Court has not heretofore considered or discussed this issue. However, in 1915 the Legislature did impeach A. P. Watson, a member of the Corporation Commission. It is interesting to note that one of the attorneys who represented Watson in those proceedings (W. A. Ledbetter) was a member of the Constitutional Convention. In answer to the Articles of Impeachment, the jurisdiction of the Senate, Sitting as a Court of Impeachment, was not challenged on the grounds that a Corporation Commissioner was not subject to impeachment, but on the grounds that the alleged acts forming the grounds for the charges occurred during a prior term of office. See "Law Procedure followed by Oklahoma State Senate Sitting as a Court of Impeachment, and orders of the Court of Impeachment, and Findings in the case of 'State of Oklahoma v. A. P. Watson, Corporation Commissioner', Fifth Legislature, 1915."

By the above impeachment proceedings in 1915, the Legislature had to make a finding that Corporation Commissioners were within the purview of an "elected executive officer" as that term was employed in Mabin v. Rosser, supra, promulgated in 1909, and liable and subject to impeachment. This legislative finding is supported by the following constitutional provisions.

Article IV, § 1, Okla.Const., provides:

"The powers of the government of the State of Oklahoma shall be divided into

three separate departments: The Legislative, Executive, and Judicial; *and except as provided in this Constitution,* the Legislative, Executive and Judicial Departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others." (emphasis ours).

It is to be noted that the above proviso contains an express exception, to wit, "except as provided in this Constitution". In discussing this exception in Ex parte Tindall, 102 Okl. 192, 229 P. 125, we said:

"The creation by the Constitution, of the Corporation Commission as an administrative board is one exception to the provisions of article 4, the creation of an agricultural board is another, the authorization of the creation of the banking board is another, each being either specifically created by the Constitution, or its creation expressly authorized by the Constitution, and each specially vested by law, with a given sphere of 'administrative power', and charged with the duty of enforcing them."

These exceptions were also discussed in Russell v. Walker, 160 Okl. 145, 15 P.2d 114, wherein we held that under the provisions of Article IX, Const., the Corporation Commission is vested with legislative, executive and judicial power. Also, by the provisions of Art. VII, § 1, Constitution, a portion of the judicial power of the State is vested in the Senate, Sitting as a Court of Impeachment. In Vogel v. Corporation Commission of Oklahoma, 190 Okl. 156, 121 P.2d 586, we said:

"* * * The Corporation Commission is not a court and the commissioners thereof are not judges. The Corporation Commission 'is not a part of the judicial department of the government'. * * * And this is so despite the fact that occasionally that administrative body exercises quasi-judicial functions."

The Vogel case, supra, is in harmony with Article VII, § 1, Const., as originally adopted, which vested the judicial power in a "* * * Supreme Court, District Courts, * * * and such other courts, commissions or boards, inferior to the Supreme Court, *as may be established by law.*" (emphasis ours). The Corporation Commission was not mentioned in the above section and was established by the original Constitution and not by legislative enactment.

Although in Russell, supra, we said that Corporation Commissioners were vested with legislative power, it could not be said it is a part of the legislative department as Article V, § 1, of the Constitution vests legislative authority in a Legislature, "* * but the people reserve to themselves the power to propose laws * * *."

There is a distinct difference between Article V, supra, vesting legislative authority and Article VII, supra, vesting judicial power, and Article VI, of the Constitution, which vests executive authority. Under Article VI, § 1, the executive authority is vested in the "Governor * * * and other officers provided by law and this Constitution, * * *." Article V and Article VII do not contain the language "and other officers provided by * * * this Constitution." As previously shown, the only "other officers provided by * * this Constitution," except those specifically named as being in a distinct department of government and established by the original Constitution, are Corporation Commissioners and the Clerk of the Supreme Court. Under the above Constitutional provisions, it could not be said that Corporation Commissioners do not fall within the purview of Article VI, § 1, supra, which relates to the executive department.

█ We can only conclude and hold that Corporation Commissioners are included in the language "* * * and other elective State officers, * * *" as is employed in Article VIII, § 1, of the Constitution, and are liable and subject to impeachment.

## PROPOSITION II

DOES THE CONSTITUTIONAL ARTICLE GOVERNING IMPEACHMENT OF CERTAIN STATE OFFICERS RENDER INEFFECTIVE AS

TO THOSE OFFICERS LIABLE AND SUBJECT TO IMPEACHMENT, OTHER CONSTITUTIONAL PROVISIONS GOVERNING FORFEITURE OR VACATION OF OFFICE? Our answer is NO.

Defendants contend that these proceedings are, in effect, "removal proceedings" and that impeachment by the Legislature is the exclusive method for removing Corporation Commissioners and that any act of this Court to remove them from office would be in excess of its jurisdiction and beyond the constitutional grant of power. Defendants argue that since the Constitution has prescribed that Corporation Commissioners are liable and subject to impeachment, the method and grounds established by the Constitution are exclusive and they may not be removed by any other method or on any other grounds.

■ In State ex rel. Trapp v. Chambers, 96 Okl. 78, 220 P. 890, 30 A.L.R. 1144, we held that the Legislature, by the Constitution, is given definite governmental duties and has exclusive jurisdiction over matters of impeachment. However, in these proceedings, State is not seeking to remove defendants from office but is seeking a judicial determination that defendants have forfeited or vacated their respective offices by doing certain acts which constitute grounds for forfeiture or vacation of their offices under our Constitution. Although impeachment may be the exclusive method for removing an officer subject to impeachment, the provisions of the Constitution concerning "impeachment" must be considered in connection with equally mandatory provisions of the Constitution concerning "forfeiture" or "vacation" of office. This is based upon the theory that parts of our Constitution, proposed by the same framers and adopted by the people at the same time, should be construed so as to permit both to stand and give force and effect to each, if they are susceptible of such construction. See Maben v. Rosser, 24 Okl. 588, 103 P. 674.

The Supreme Court of Alabama adopted this theory in Stone v. State ex rel. Freeland, 213 Ala. 130, 104 So. 894, in considering a case similar to the instant proceedings. In that case Freeland was a county treasurer and under the Alabama Constitution subject to impeachment. That decision cited several cases supposedly sustaining rule that any statutory provision for removal of an officer subject to impeachment must yield to the constitutional provision on impeachment. That Court did not rely on a statutory enactment but said that the constitutional impeachment provision would have to be considered in connection with another constitutional provision which provided that:

"No person convicted of embezzlement * * * shall be eligible to the Legislature, or capable of holding any office of trust or profit in the state." Const.1890, § 60.

The Alabama Court said that the above constitutional provision had a field of operation wholly apart from the provisions for impeachment, and that such provision deals with a fixed status, giving recognition to a past conviction, while the constitutional impeachment proviso looks to removal upon prospective trial.

Could it be seriously argued that an action in the nature of quo warranto would not lie against a state officer who is liable and subject to impeachment, if such officer accepted another office of trust or profit under the laws of this State? We believe not. See Article 2, § 12, of our Constitution and our construction of said section in Winberly v. Deacon, 195 Okl. 561, 144 P.2d 447.

■ We can only conclude that the Constitutional article on impeachment has a field of operation wholly apart from other equally mandatory provisions of the Constitution which govern the forfeiture or vacation of office. We also conclude there is a clear-cut distinction between proceedings to "remove" an officer and a proceeding seeking a judicial determination that an officer has "forfeited" or "vacated" his of-

fice. Therefore, the constitutional article governing impeachment of certain state officers does not render ineffective as to those officers liable and subject to impeachment, other equally mandatory constitutional provisions governing forfeiture or vacation of office.

## PROPOSITION III

DOES THIS COURT HAVE THE JURISDICTION AND POWER TO MAKE A JUDICIAL DETERMINATION THAT A CORPORATION COMMISSIONER HAS FORFEITED OR VACATED HIS OFFICE FOR VIOLATION OF HIS OATH OF OFFICE AS PRESCRIBED BY ARTICLE XV, § 1, OF THE CONSTITUTION, UNTIL SUCH COMMISSIONER "SHALL HAVE BEEN CONVICTED OF * * * HAVING VIOLATED SAID OATH", IN A COURT OF COMPETENT JURISDICTION? Our answer is NO.

The material allegations against both defendants in Count I and Count II are:

### COUNT I
* * *

That while members of the Corporation Commission in 1961 and 1963, defendants were instrumental in obtaining financial support for, and became a part owner of a (named) well servicing company and made requests to various oil companies that business be given to said well servicing company, which business said company received from various oil companies from 1961 to 1965, in violation of their oath of office as prescribed by Article XV, § 1, of the Constitution of Oklahoma.

### COUNT II
* * *

That while members of the Corporation Commission, defendants accepted free transportation on aircraft owned by oil companies in violation of their oath of office as prescribed by Article XV, § 1, supra.

* * *

In their separate answers each defendant denied that he was ever part owner of the

440 P.2d—48

(named) well servicing company or did anything in relation thereto in violation of "his" oath of office or the public trust, or ever accepted free transportation as contemplated by or prohibited by the Constitution or did anything in violation thereof.

To sustain its contention that defendants have forfeited or vacated their respective offices for violation of their oaths as prescribed by § 1, supra, State argues that a violation of such oath disqualifies them from holding their offices under the specific language of Article XV, § 2, of the Constitution. State construes this section as providing that " * * * any person * * * having violated said oath * * * shall be disqualified from holding any office of trust or profit within the State."

State's construction of § 2, is not in harmony with its specific language which, inter alia, provides " * * * any person refusing to take said oath, or affirmation, shall forfeit his office, and *any person who shall have been convicted of having sworn or affirmed falsely, [or affirmed falsely] or having violated said oath, or affirmation, shall be guilty of perjury, and shall be disqualified* from holding any ofice of trust or profit within the State." (emphasis ours).

In "A History of the Constitutional Convention of the State of Oklahoma" by Albert H. Ellis, Second Vice President of the Constitutional Convention and Speaker Pro Tempore of the First State Legislature, on page 144, we find the following:

"For a violation of this Oath of office, Section 2 of the oath provides the forfeiture of office; and any person who shall have been convicted of having sworn falsely or having violated his oath, shall be disqualified from holding any office of trust or profit within the State."

██ Although the opinion of Mr. Ellis as to the construction of Sec. 2, supra, is not controlling, it is persuasive in view of the above underlined language which clearly discloses that before a person "shall be disqualified from holding any office of trust or profit within the State", such person

"shall have been convicted of * * * having violated said oath." We therefore hold that before a person "shall be disqualified from holding any office of trust or profit within the State", under the provisions of Article XV, § 2, of the Constitution, such person "shall have been convicted of * * * having violated said oath", in a court of competent jurisdiction.

Since defendants have not been convicted in a court of competent jurisdiction of having violated their oaths of office as prescribed by Article XV, § 2, of the Constitution, this Court does not have the jurisdiction and power to make a judicial determination that defendants have forfeited or vacated their respective offices under Counts I and II.

## PROPOSITION IV

IF A CORPORATION COMMISSIONER BECOMES INTERESTED IN THE STOCK OR EARNINGS IN A TYPE OF COMPANY OR ASSOCIATION SPECIFICALLY MENTIONED IN ARTICLE IX, § 16, OF THE CONSTITUTION, OR BECOMES ENGAGED IN "AN OCCUPATION OR BUSINESS INCONSISTENT WITH HIS DUTIES AS SUCH COMMISSIONER", DOES HIS OFFICE BECOME VACANT? Our answer is YES.

The material allegations in Count III and Count IV, are:

## COUNT III

* * *

That while members of the Corporation Commission, defendants accumulated substantial holdings in oil and gas properties in the State of Oklahoma; that defendant Freeman, while he was a member of the Corporation Commission has at various times owned shares of stock in (named) oil companies, and in a (named) pipe line company; that defendant Jones, while a member of the Corporation Commission participated in purchases made from a joint bank account with his wife in stock in a (named) gas company and in stock in a (named) pipe line company and stock in a (named) gas company, a utility regulated by the Corporation Commission; and that all of said acts constitute violations of and are prohibited by Article IX, § 16, of the Constitution.

* * *

In their separate answers each defendant denied that he had ever at any time been directly or indirectly engaged in any business or enterprise inconsistent with "his" duties as a Corporation Commissioner or in violation of the Constitution.

Article IX, § 16, of the Constitution, (divided herein for clarification) inter alia, provides:

(a) "* * * nor shall such commissioners, or either of them, be, directly or indirectly, interested in any railroad, street railway, traction line, canal, steam boat, *pipe line*, car line, sleeping car line, car association, express line, telephone or telegraph line, *operated for hire*, in this State, or out of it, or any stock, bond, mortgage, security, or earnings of any such railroad, street railway, traction line, canal, steam boat, pipe line, car line, sleeping car line, car association, express line, telephone or telegraph line, compress or elevator companies; *and if such Commissioner shall voluntarily become so interested, his office shall become vacant;* and if any Corporation Commissioner shall become so interested otherwise than voluntarily, he shall, within a reasonable time, divest himself of such interest; and failing to do this, his office shall become vacant.

(b) "* * * Nor shall any such commissioner hold any other office under the government of the United States, or of this State, or any other state government, *and shall not, while such Commissioner, engage in any occupation or business inconsistent with his duties as such commissioner.*" (emphasis ours).

State contends that by becoming interested in the shares of stock of various oil companies, a natural gas company, and in a pipe line company operated for hire, and

by acquiring holdings in oil and gas properties defendants have forfeited or vacated their respective offices, as prescribed by paragraph (a), supra.

Under paragraph (a), supra, Corporation Commissioners are prohibited from becoming voluntarily interested in the stock or earnings of fourteen types of companies or associations, operated for hire. Stock in, or earnings of, oil or natural gas companies, or the acquisition of oil or gas properties, does not fall within the purview of the prohibitory provisions of paragraph (a), supra.

Becoming voluntarily interested in the stock of a "pipe line company * * * operated for hire" comes within the prohibitory provisions of paragraph (a), supra. Therefore, if a Corporation Commissioner has become voluntarily interested in the stock of a "pipe line company * * * operated for hire", under the mandatory language of § 16, supra, "his office shall become vacant."

State also contends that by such ownership and acquisition, defendants have become engaged in an occupation or business inconsistent with their duties as such Commissioners and have vacated their respective offices as prescribed by paragraph (b), supra.

In Bond v. Phelps, 200 Okl. 70, 191 P.2d 938, we said:

"We believe it clear that the word inconsistent as used in Section 16, Article 9 is intended to prevent the Commissioners from engaging in any occupation or business which might prevent the Commissioners from being perfectly impartial and fair as such. It has been suggested that this Section prohibits Commissioners from accepting any other employment, but we cannot agree. It would be inconsistent with his duties as Commissioner for a Commissioner to hold stock in or be employed by a litigant before the Commission. It would not be inconsistent for him to run a poultry farm, leastwise, until the production of eggs is declared to be charged with public interest and thus require regulation. * * *."

In our opinion, ownership of stock in an oil or gas company, or the acquisition of oil and gas properties by a Corporation Commissioner, does not, under all circumstances, constitute engaging "in an occupation or business inconsistent with his duties as such commissioner"; but much ownership and acquisition, may or may not be "inconsistent with his duties as such commissioner", depending upon the facts and circumstances. This conclusion is in harmony with the conspicuous exclusion of the language "public service corporations" (as defined in Article IX, Sec. 34, of the Constitution) from the specific language of paragraph (a) supra, which sets forth certain types of companies or associations coming within its purview. Also, the additional oath of office required of Corporation Commissioners by Article IX, Sec. 17, of the Constitution, when considered in connection with Sec. 16, supra, supports this conclusion.

No rigid or inflexible formula can be prescribed for determining what constitutes engaging in an "inconsistent" occupation or business; but it may be stated as a general rule of guidance that if an occupation, business activity, or business activities, in which a Corporation Commissioner participates or with which he is connected, operates as an effective interference with the discharge of the functions of his office, he shall be deemed to be "engaged in an occupation or business inconsistent with his duties as such commissioner." Within the meaning of the general rule of guidance, any interest in any occupation, business activity, or business activities, which is affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction, constitutes such "effective interference."

### PROPOSITION V

ARE THE PROHIBITORY PROVISIONS OF ARTICLE IX, § 16, OF THE CONSTITUTION, SELF-EXECUTING? Our answer is YES.

There are no statutory provisions implementing Sec. 16, supra, and defendants

contend that the same is not self-executing. They argue that since the Legislature impeached a Corporation Commissioner in 1915, that it must have determined that it was not self-executing.

If by impeaching a Corporation Commissioner in 1915, the Legislature determined that § 16, supra, was not self-executing, it has by its failure to enact implementing legislation, entirely emasculated the prohibitory provisions of said section. We are of the opinion the Legislature has not emasculated the prohibitory provisions by its inaction.

Paragraph (a) of § 16, supra, specifically prescribes that "if such Commissioner shall voluntarily become so interested, his office shall become vacant." This language is clear and unambiguous and had the framers of our Constitution and the people who adopted it intended another sanction, such sanction would have been set forth.

Paragraph (b) of § 16, supra, provides in part that a Commissioner shall not "hold any other office under the government of the United States, or of this State, or any other state government * * *." This language is similar to the language employed in Article 2, § 12, of the Constitution, which provides:

"No member of Congress from this State, or person holding any office of trust or profit under the laws of any other State, or of the United States, shall hold any office of trust or profit under the laws of this State."

In Wimberly v. Deacon, 195 Okl. 561, 144 P.2d 447, we placed a construction on the above proviso and held:

"The provisions of Sec. 12, Art. 2, of the State Constitution, are self-executing and fully operative so that the acceptance of the second or prohibited office operates ipso facto to absolutely vacate the state office first held."

The remaining portion of paragraph (b), supra, provides "and shall not, while such Commissioner, engage in any occupation or business inconsistent with his duties as such commissioner."

If the language "Nor shall any such commissioner hold any other office under the government of the United States, or of this State, or any other state government", is self-executing and fully operative, and we hold under the authority of Wimberly v. Deacon, supra, that it is, we can see no legal or logical reason why the language that immediately follows "and shall not, while such Commissioner, engage in any occupation or business inconsistent with his duties as such commissioner", would not be self-executing and fully operative. Such language is equally prohibitive and in the case of Ex parte Hudson, 3 Okl.Cr. 393, 106 P. 540, 107 P. 735, it is stated that prohibitory clauses of a constitution are always self-executing and require no legislative provisions for their enforcement. In Oklahoma Natural Gas Company v. State ex rel. Vasser, 187 Okl. 164, 101 P.2d 793, we said:

"It is a familiar rule of constitutional and statutory construction that sections are to be construed so as to give effect to every part thereof, that each provision of a section should be construed so as to harmonize with all the others, yet with a view to giving effect to each and every provision insofar as it shall be consistent with a construction of the section as a whole; the presumption being that every provision has been intended for some useful purpose. * * *."

▮ We hold that the prohibitory provisions of § 16, supra, are self-executing and fully operative. However, State does not contend that the alleged acts of defendants operate ipso facto to vacate their respective offices under the circumstances presented. State's position is in harmony with the views expressed by the Senate Investigating Committee and with "due process" as embodied in Article 2, § 7, Oklahoma Constitution, which requires that if an official whose office is sought to be declared vacated, raises contested

issues of fact, he must be granted an opportunity to litigate in a proper judicial forum, all fact issues which may be involved. It necessarily follows that if defendants have committed any of the alleged acts prohibited by § 16, supra, their offices have not become vacated until defendants have been afforded the opportunity to litigate all contested fact issues in a proper judicial forum and a final judicial determination made adjudicating such facts.

We have heretofore held that under the authority of Article VII, § 4, of the Constitution as amended, and Title 12 O.S. 1961, Sections 1531 and 1532, this Court has jurisdiction of actions in the nature of quo warranto and the power to judicially determine whether or not the defendants have forfeited or vacated their respective offices.

## PROPOSITION VI

IF A TRANSCRIPT OF THE ORAL AND DOCUMENTARY EVIDENCE GATHERED BY THE SENATE INVESTIGATING COMMITTEE WERE FILED IN THESE PROCEEDINGS, MAY THIS COURT, THROUGH THE MEDIUM OF JUDICIAL NOTICE, ACCEPT AS EVIDENCE ON THE CONTESTED FACT ISSUES PRESENTED, ANY ADJUDICATIVE FACTS EITHER ELICITED OR PREDETERMINED BY THE SENATE INVESTIGATING COMMITTEE? Our answer is NO.

For factual support of its allegations State seeks resort to these documentary products of the Senate Investigating Committee's hearings: The investigation report; a stenographic transcription of those parts of defendants' testimony in the proceedings which are said to "relate" to the issues in these causes; and certain written instruments presented in the course of proceedings and regarded as relevant here. Their admissibility is urged upon three grounds: 1) this Court "can take judicial notice of the report and proceedings of

the State Senate Committee which investigated the Corporation Commission"; 2) the report as well as the partial transcript of the Senate Investigating Committee are "a public record" within the meaning of Title 12 O.S.1961, § 502; and 3) admissions of a party constitute primary evidence. For the reasons to be stated, we deem the first two arguments untenable and the third to be well taken.

The courts take judicial notice of all official acts and proceedings of the legislative branch of our state government and regard them as being in the nature of public facts. Lusk v. Ryan, 69 Okl. 165, 171 P. 323, 324; Applications of Oklahoma Turnpike Authority, Okl., 277 P.2d 176, 181. When these acts or proceedings are formally reflected or memorialized in any legislative document, be it a committee report, an official transcript of hearings, a journal, a statute, or a resolution, the courts may judicially notice its existence and contents. Dyer v. Shaw, 139 Okl. 166, 281 P. 776, 777; Wright v. State, 192 Okl. 493, 137 P.2d 796; 31 C.J.S. Evidence § 43, pages 995, 997. By this method formal authenticating proof of the genuineness of legislative documents is dispensed with. But this does not mean that if the document falling into this category contains a statement or recitation of facts about the parties to a court action and about particular transactions which are the subject-matter of controversy, such facts may themselves be judicially noticed. There is a marked distinction between taking notice of legislative sources, documents and materials (without formal proof of their authenticity) as an aid in construing a statute, and accepting facts recited in such materials as evidence of their existence or truth. Facts to which the law is to be applied in the process of adjudication are called adjudicative facts. These are facts "about the parties". They must be ascertained from formal proof and are to be distinguished from "legislative facts", or those which are helpful to a court in determining the meaning, effect, content or validity of enactments.

Legislative facts, which are ordinarily general in nature, may be noticed from official source materials, whether or not they have been formally developed on the record in a judicial proceeding. Associated Hospital Service, Inc. v. City of Milwaukee, 13 Wis.2d 447, 109 N.W.2d 271, 88 A.L.R.2d 1395, 1403; Davis, Administrative Law, Vol. 2, § 15.03; McCormick, Judicial Notice, 5 Vanderbilt Law Review (1952), 296, 316.

An example of the distinction between adjudicative and legislative facts is afforded by the opinion in United States v. Aluminum Co. of America, 2d Cir., 148 F.2d 416, 446. There the court took cognizance from a legislative source (the "Truman Report") of certain facts as "relevant to the remedies" to be fashioned, but declined to notice such facts as "relevant to the correctness of the [legislative] findings." In other words, to quote Professor Davis, "the same facts in the same circumstances were noticed for one purpose and not for another purpose; used in one way the facts were legislative and used in the other way they were adjudicative." Davis, Administrative Law, Vol. 2, § 15.03, p. 360.

Stasiukevich v. Nicolls, 1st Cir., 168 F.2d 474, 479, cited by State, does not support its broad assertion that legislative source materials may be noticed judicially for all purposes. That case does not deal with *adjudicative facts*. It holds that *legislative facts,* general in nature and not relating directly to the immediate parties, may be judicially noticed from legislative sources, if relevant to a factual proposition of law to be decided, but the court will not regard them as conclusive or more than mere evidence. This pronouncement is plainly in keeping with the rule that although the authenticity of the source may be accepted without formal proof, *legislative facts* or findings relevant to a factual proposition of law can be freely disputed by evidence. United States v. Aluminum Co. of America, supra; see also Communist Party of the United States v.

Subversive Activities Control Board, 367 U.S. 1, 110, 111, 81 S.Ct. 1357, 1417, 1418, 6 L.Ed.2d 625, 689.

We accordingly hold that this Court may not, through the medium of judicial notice, accept as evidence on the contested fact issues in these proceedings any adjudicative facts either elicited or predetermined by the Senate Investigating Committee. Associated Hospital Service, Inc. v. City of Milwaukee, supra.

Neither the proffered report nor the transcript is admissible here as "official documents" falling within the contemplation of Title 12 O.S.1961, § 486 and § 502. The cited statutes render some public records admissible without formal identification.

The exception of official documents from the hearsay rule was recognized at common law. 5 Wigmore on Evidence, § 1638 (3rd Ed.). By force of the exception, documents prepared by public officials pursuant to a duty imposed by law or required by the nature of their offices are admissible as proof of the facts stated in them. This rule rests on the rationale that it would unduly interrupt public business if public officials were called to appear in the myriad of cases in which their testimony might be needed in court, and that records and reports of their duties will be generally more reliable than their recollection. Since the official documents so sought to be admitted are merely a substitute for the parol testimony of the official who prepared them, such documents, to be received as evidence, must concern facts as to which the official could testify from first-hand knowledge if he were called as a witness. In other words, an official document, to be admissible, must state facts within the personal knowledge and observation of the recording official or his subordinates. Official reports based on general investigations and upon information received second-hand from random sources must be excluded. Olender v. United States, 9th Cir., 210 F.2d 795, 42 A.L.R.2d 736; Love v. Common School

District No. 28, 192 Kan. 780, 391 P.2d 152, 153. Only those official documents are admissible which are based solely on the personal knowledge of the official who prepared them. Any documentary evidence sought to be admitted in these proceedings must be properly identified by testimonial predicate. In re Hess Estate, Okl., 379 P.2d 851, 859.

■ These general rules governing the competency of evidence apply with equal force and effect to proferred public documents, whether their admissibility is sought under the common-law exception to the hearsay rule or under a statute. The statute cannot be construed as operating to abrogate the time-honored prohibition against reception of hearsay evidence. Evidence sought to be shown by public records, which would be inadmissible if those who prepared such records were present as witnesses, will not be rendered competent just because it is embodied in an official document. The rigors of hearsay rule and the requirement of first-hand knowledge are read into the statute as conditions upon admissibility. Hadley v. Ross, 195 Okl. 89, 154 P.2d 939, 942; Douvas v. Newcomb, Okl., 267 P.2d 600; City of Enid v. Reeser, Okl., 330 P.2d 198; 32 C.J.S. Evidence § 626, pgs. 793, 794. In accordance with this view, it is generally held that the report of an official investigation is inadmissible unless the inquisition or inquiry was in the nature of judicial proceeding in which the right of cross-examination and other traditional safeguards of due process were accorded and observed. Douvas v. Newcomb, Okl., 267 P.2d 605; Franklin v. Skelly Oil Co., 10 Cir., 141 F.2d 568, 153 A.L.R. 156; Olender v. United States, supra; Universal Air Lines v. Eastern Air Lines, 88 U.S.App.D.C. 219, 188 F.2d 993, 1000; 32 C.J.S. Evidence § 637, p. 813.

The Senate Committee, whose report and transcribed proceedings are proferred, sat as an investigative arm of the Legislature and not as a court. According to the Senate Journal, Thirty-First Legislature, January 2, 1968, pages 36, 37, the Committee was keenly aware of its lack of authority to prosecute "any person for a law violation or to take disciplinary action against any member of any profession"; that its primary objective was to search for facts "beneficial in formulating recommendations for remedial legislation"; that persons "accused of wrongdoing or irregularity * * * [were] not accorded the opportunity of cross-examination of witnesses appearing before the committee"; and that to insure an expeditious and orderly proceeding and for formulating recommendations for remedial legislation, evidence "that would not be admissible in any judicial proceeding" was received in the course of the hearings.

■ There exists an additional reason why the proffered transcript, although "official", may not be admitted under the provisions of Title 12 O.S.1961, § 486 and § 502. This is because it clearly does not fall within the class of records required by law to be kept or filed in a public office. As counsel for defendants correctly pointed out, the only records the Legislature is required to keep are the journals of its proceedings. Art. 5, § 30, Okla.Const.; McNeal v. Ritterbusch, County Treasurer, et al., 29 Okl. 223, 116 P. 778; Atchison, T. & S. F. Ry. Co. v. State, 28 Okl. 94, 113 P. 921, 40 L.R.A., N.S., 1; see also, Noble v. City of Bethany, 206 Okl. 122, 241 P.2d 401, 404.

Neither can parts of the transcript be received here as evidence taken in a former proceeding. In order to render testimony given in one proceeding admissible in another, these requirements must be met: 1) the testimony must have been given at a previous regular trial of the same action; 2) or at a former trial or proceeding directed to well defined issues where the parties and the issues were substantially the same; 3) the party seeking to introduce the testimony formerly given must show his inability to procure it at a subsequent trial; and 4) there must have

been an opportunity to cross-examine the witness at the former trial. Travelers Fire Insurance Company v. Wright, Okl., 322 P.2d 417, 420, 421, 70 A.L.R.2d 1170; 31A C.J.S. Evidence §§ 385–393. The proffered transcript would manifestly fail to satisfy the requirements governing admissibility of testimony taken in a prior trial or proceeding.

The proffered portions of defendants' transcribed testimony, insofar as they may contain admissions against interest, could be received here as substantive or primary evidence in chief. Impeachment testimony is that designed to discredit a witness or to reduce the effectiveness of his testimony by bringing forth evidence explanatory of why the jury should not put faith in him or his testimony. Unlike impeachment evidence, substantive or primary evidence is offered for the purpose of persuading the trier of facts as to the truth of the proposition on which the determination of the tribunal is sought. Zimmerman v. Superior Court, 98 Ariz. 85, 402 P.2d 212, 215.

Generally, any prior statement of a party-litigant, which constitutes an admission against interest, whether oral or written, under oath or unsworn, is admissible as substantive original or primary evidence, if relevant to the matter in controversy. Pan-American Petroleum & Transport Co. v. United States, 273 U.S. 456, 47 S.Ct. 416, 71 L.Ed. 734; Scaggs v. Lindsey Well Service, Inc., Okl., 366 P.2d 945, 948; Hopper v. Rowntree, Okl., 275 P.2d 285, 291; 31A C.J.S. Evidence § 273, p. 704; 31A C.J.S. Evidence §§ 369–371. A showing that the declarant is unavailable to testify is not a condition to the admissibility of an admission. 31A C.J.S. Evidence § 311, p. 797. Generally, a party's statement against interest may be proved by questioning the party making it or by any competent witness who heard it. Peterson v. Richards, 73 Utah 59, 272 P. 229; 31A C.J.S. Evidence § 370, p. 896.

A testimonial admission in another proceeding is not conclusive on the witness. It may be explained or contradicted. A like rule applies to admissions made by counsel. Avis v. Hopping, 184 Okl. 527, 88 P.2d 622, 625; 31A C.J.S. Evidence § 381, pgs. 928, 929. Similarly, a plea of guilty in a former criminal proceeding is not deemed conclusive on the pleader but may be explained or rebutted in a subsequent civil case in which the plea is in evidence as an admission. Wade v. Reimer, Okl., 359 P.2d 1071.

Inasmuch as the transcribed admissions of the defendants, which form a part of their testimony before the Senate Committee, could not be admitted here under the provisions of Title 20 O.S.1961, § 115, as the certified transcript of "[t]he official court reporter of any court of record", State will have to seek resort to the common-law method of establishing such admissions. Under that method the admissions may be proved by the testimony of the stenographer from the notes made during the hearings or by the testimony of any witness who can swear to it from memory. See, Travelers Fire Insurance Company v. Wright, Okl., 322 P.2d 417 at 419; 31A C.J.S. Evidence § 401, p. 976.

## DISPOSITION

The Court assumes original jurisdiction in these proceedings. State is authorized to submit, within twenty (20) days after this opinion becomes final, a designation of those parts of defendants' testimony which are deemed to constitute admissions against interest and whose formal introduction will be sought, together with a list of documents it will seek to offer after proper identification. Defendants are granted twenty (20) days thereafter to file objections to the portions so designated and to the exhibits sought to be admitted.

After the designation and objections thereto, if any, have been filed, the parties will advise this Court if they desire to produce further evidence. If evidentiary proceedings are requested or are neces-

sary, this Court will provide by order the proper forum for such proceedings.

Application to assume original jurisdiction granted; proceedings continued as herein specified.

Parties granted fifteen (15) days from this date to file Petition for Rehearing and Brief in Support thereof.

JACKSON, C. J., and DAVISON, MARMADUKE, BLACKBIRD, RUTH, HODGES, LAVENDER and McINERNEY, JJ., concur.

Justice WILLIAMS and Justice BERRY, having certified their disqualification in this case, Honorable ARTHUR J. MARMADUKE, Duncan, Oklahoma, and Honorable JOHN A. RUTH, Kingfisher, Oklahoma, were appointed Special Justices in their stead.