Moroni L. JENSEN, President of the Senate, Glade M. Sowards, Speaker of the House, Plaintiffs, Appellants and Cross-Respondents,

v.

Scott M. MATHESON, Governor, et al., Defendants, Respondents and Cross-Appellants.

No. 15826.

Supreme Court of Utah.

July 27, 1978.

Melvin E. Leslie, Gary E. Atkin, Steven W. Allred, Salt Lake City, of Legislative Gen. Counsel, for plaintiffs, appellants and cross-respondents.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Deputy Atty. Gen., H. Wright Volker, Asst. Atty. Gen., Salt Lake City, for defendants, respondents and cross-appellants.

CROCKETT, Justice:

Plaintiffs Moroni L. Jensen, President of the State Senate, and Glade M. Sowards, Speaker of the House, brought this declaratory judgment action in district court to have a determination made as to the validity of certain bills passed by the 1978 budget session of our Legislature.

The questioned bills, with their identifying labels are House Bills Numbered 1 (Devereaux House Appropriation), 14 (Governmental Immunity Act Amendments), 96 (Highway Revenue), 108 (School Finance), 110 (Supplemental Appropriation) and Senate Bill No. 53 (Utah Technical Colleges Governance).

The questions raised are whether, in enacting those bills, the procedures set forth in Sec. 22 of Article VI, of our Constitution were properly followed.

Every bill shall be read by title three separate times in each house except in cases where two-thirds of the house where such bill is pending suspend this requirement. Except general appropriation bills and bills for the codification and general revision of laws, no bill shall be passed containing more than one subject, which shall be clearly expressed in its title. The vote upon the final passage of all bills shall be by yeas and nays and entered upon the respective journals of the house in which the vote occurs.

The trial court granted plaintiffs' Motion for Summary Judgment as to House Bill Numbers 1, (Devereaux House Appropriation) and 14, (Governmental Immunity Act Amendments), declaring that they had not been constitutionally passed; but, on the contrary, granted defendants' Motion for Summary Judgment as to the other bills referred to and declared that there was no constitutional impropriety as to them.

With respect to each of the bills referred to, there was an entry in the journal of each house that the bill had been passed; that it had been so certified by the Speaker of the House, the President of the Senate, so certified by the Clerk of each house, signed by the Governor and so certified to and enrolled by the Secretary of State. The attack upon the validity of those bills was on the ground that the voice recordings of legislative proceedings do not show compliance with Section 22 quoted above. This raises the problem as to what extent a court challenge may examine into operations of the Legislature.

In the interest of brevity, and because of our conclusion stated herein, it is not deemed essential to detail the claimed deficiencies in legislative procedure urged as invalidating each of the acts referred to. It

is sufficient for our purpose to so state and discuss House Bills No. 1 and 14, which were found to be invalid on account of such deficiencies. Insofar as material to the issues presented in this case, it can be said in summary: that the journal entries with respect to each of those bills reflect that it had been read more than once, including that it had been passed on the third reading, and that the essential certifications set forth above had been complied with.

In considering our problem, there is the choice of two contrasting judicial policies. The one of exercising judicial restraint and not intruding unduly into the details of the Legislature's operations and thus respecting its prerogatives in determining the manner and propriety of its own activities as an independent branch of government. The other is to become involved in supervising the details of the proceedings of the Legislature. We think that the first proposition represents the course which is wiser, more practical and best serves the desirable objective of respecting the integrity and maintaining the balance between the separate branches of our government.

This problem was met at the beginning of our statehood in the case of *Ritchie v. Richards*.[1] In that case, there is a well-considered and extensive analysis of the two different points of view. The most restrictive one, which is known as the "Enrolled Bill Doctrine," was espoused by Chief Justice Zane. It is grounded upon the proposition that when a legislative enactment has gone through the legislative process, has received the certifications by the responsible officials as recited above, and has been enrolled by the Secretary of State, there arises a practically irrebuttable presumption of validity.

Basing his opinion upon the doctrine of judicial restraint and respect for the separation of powers, Chief Justice Zane made a very persuasive argument for the "Enrolled Bill Doctrine." The essence thereof is that when the legislative procedures have taken place, the due certification by the proper authorities gives sufficient assurance as to the procedural proprieties that the act should be conclusively presumed to have been passed as so certified; and that no other evidence should be used to impeach it. However, the majority of our Court, Justice Bartch, with Justice Miner concurring, took what we regard as a more moderate and desirable rule than the absolute presumption rule above stated. It allows reference to the legislative journals only to determine the regularity of procedure.

The justification for that position proceeds from Article VI of our state Constitution which sets forth some basic procedural requirements. Section 14, requires that:

. . . *each house shall keep a journal* of its proceedings, which, except in case of executive sessions, shall be published, and the yeas and nays on any question, at the request of five members of each house, shall be entered upon the journal.

. . .

It is significant that the only other constitutional provision as to the passing of a bill and recording the votes thereon is that contained in Section 22, quoted above that:

. . . *the vote upon the final passage* of all bills *shall be* by yeas and nays and *entered upon the respective journals* of the house in which the vote occurs. [Emphasis added.]

■ Because of the provisions just referred to, which require the keeping of journals and the entry only of the final vote on bills therein, and further because our state Constitution provides that its requirements are mandatory,[2] we are in agreement with the view that upon a challenge to the regularity of legislative procedures, the Court may look to the journals to see if that required procedure was complied with. But due to the presumption of regularity of procedure and the validity of legislative enactments, when the certifications delineated above have been completed, in order to declare an enactment invalid it would have to appear affirmatively from the journal

1. 14 Utah 345, 47 P. 670 (1896).

2. Utah Constitution, Article I, Sec. 26.

that there was some constitutional defect, and that this could not be shown by mere silence.[3]

Our reaffirmation of the majority view in *Ritchie v. Richards*, supra, is not merely because of veneration for its age and its authority as established law (although we are not insensitive to those values). But we do so for what we regard as its sound reasoning and salutary declaration of policy. We do think it would not be consistent with proper judicial restraint and that it would lead to impractical and perhaps interminable difficulties for the courts to go beyond the journals and permit listening to the complex and sometimes confusing voice recordings of sessions of the Legislature and/or other evidence to impeach what are presumed to be duly enacted laws; and would also provide a means for the continuation of controversies over hotly contested legislation.

The pattern of looking to the journals to determine the authenticity of a bill has been given approval and followed in subsequent cases. *Dean v. Rampton*, Utah, 538 P.2d 169 (1975); *Hansen v. Jensen*, (No. 15433, Sept. 30, 1977). It is also significant that *Ritchie v. Richards*, supra, has been regarded as a leading case on the subject and that a majority of courts that have dealt with this problem are in accord with its holding. Upon its analysis of the cases on the subject, Corpus Juris Secundum states that, "Broadly speaking the courts agree that as a general rule extrinsic evidence other than the legislative journals is inadmissible to impeach the validity of a statute." [4]

■ In accordance with what has been said herein, the rule we approve is that in determining the validity of legislative enactments, resort may be made to the legislative journals only and that no other evidence may be used to impeach the validity of the enrolled act. A mere silence of the journal will not nullify the act and unless the journal affirmatively and directly impeaches the propriety of the legislative procedure, the presumption of validity of the act stands. We observe that, though not involved herein, there should perhaps be an exception if there were a bona fide charge of falsification, surreptitious expungement, alteration, or other machination in regard to the constitutionally required records.

■ In applying the principles we have discussed above to the controversy over the bills in question here, it does not appear that there is any affirmative showing which would require declaring any of those acts invalid.

In view of the fact that this is a declaratory judgment action, we make some further observations on the controversy as presented to the Court over these bills. One of the difficulties complained about is that, in some instances reading a bill by title, as required by Section 22 quoted above, it is not shown whether that was done by its so-called short title, i. e., a mere label, or by its official title, or by a descriptive title. These observations are general and we do not desire what is said herein to be understood as indicating any rigid formula.

■ It hardly requires stating that there is a salutary purpose in the constitutional mandate of Section 22, supra, that the subject of each act shall be "*clearly expressed* in its title." This is so the legislators will be advised of the subject and purpose of the act in order that there be no misunderstanding, omitting, nor burying or obscuring of what is being proposed. It is for that same purpose and that the act will receive proper attention and consideration that the act is required to be read by title three times. If this procedure of reading by title has any useful purpose whatever, it should mean something more than designation by a mere identifying label. A fair and practical compliance with that mandate would mean by some title sufficiently descriptive to state the subject matter and

---

**3.** 14 Utah at 363, 47 P. 670.

**4.** See text and cases cited in 82 C.J.S. Statutes § 85a; and 73 Am.Jur.2d, Statutes, Sec. 81.

generally how the act affects it. We further observe that under the presumption of regularity hereinabove stated, where the journal states "read by title," unless the contrary affirmatively appears, it is presumed to have been read by a proper and descriptive title.

WILKINS and HALL, JJ., concur.

ELLETT, Chief Justice (concurring with reservations).

The opinion as written is well done and I concur, but would hold that an engrossed bill should be given validity, absent a showing of falsification, surreptitious expungement, alteration, etc., if I could persuade this Court to that view. Not being able to so convince my brethren to that position, I am satisfied that the opinion as written will serve next best.

The provisions of Article VI, sec. 22 of our Constitution, insofar as it requires an entry in the journal, was intended to allow the voters to know how each legislator voted on all bills. It contains a record which a legislator is not permitted to deny when he seeks re-election.

MAUGHAN, Justice (dissenting).

For the following reasons I dissent. Article I, Sec. 26, Constitution of Utah, declares:

The provisions of the Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise.

Article VI, Sec. 22, Constitution of Utah, declares:

Every bill shall be read by title three separate times in every house . . . no bill shall be passed containing more than one subject, which shall be clearly expressed in its title. . . .

In my view, these clear constitutional statements leave no room to indulge in wide-ranging presumptions conclusive or otherwise. The purposes served by Secs. 22

and 14 are well known and need not be extended here. In addition, our constitution requires "Each house shall keep a journal of its proceedings, . . ." (Article VI, Sec. 14, Utah Constitution.) The main opinion would lead us to believe all the journal need contain are the yeas and nays, on the final passage of each bill. However, in view of the requirement to "keep a journal of its proceedings" that journal should be such as is defined in Sutherland [1] which is as follows:

The journal should contain a record of all formal action taken by the house whether legislative, administrative or of whatever nature including all appointments, motions, orders, resolutions, introductions of bills, committee referrals, votes, etc.

Where, as here, the journal does not record actions mandated by the constitution, it should cast some doubt upon the validity of the legislation. To say, as does the main opinion "in order to declare an enactment invalid, it would have to appear affirmatively from the journal that there was some constitutional defect and that this could not be shown by mere silence," is to depart from reality. In speaking about this, the affirmative contradiction rule, Sutherland [2] observes:

It generally results, as does the conclusive presumption rule, in sustaining every statute. Indeed, it is illusory to suppose that a bill may be rendered invalid by an affirmative entry of noncompliance. If there are defects in legislative procedure the defects may appear negatively in the journal, that is, that the journal may fail to show that the bill was read a second time or it may fail to show that a proper vote was recorded. But as a practical matter it would be remarkable for the journal to recite affirmatively that the bill was not read or a vote was not taken or that any required procedural step was not carried out.

The practical issue in these cases is whether or not an inference should arise

---

1. Sutherland, Statutory Construction, 8.02.

2. Sutherland, Statutory Construction, Sec. 15.-04.

from the legislature's failure to record procedure in the constitutional form or whether it should be presumed that the procedure was taken, but through neglect, misadventure, or inadvertence, a proper record was not made. In this respect it seems unrealistic to make the difference between validity and invalidity depend on whether the journal contains an affirmative recital of noncompliance. If the conclusive presumption is thought to be too strict, a more reasonable alternative is to accord the enrolled bill prima facie validity and admit reliable evidence to establish the actual facts if its validity is challenged.

This brings us to a consideration of what is known as the reliable evidence rule, which has been adopted in several of our neighboring states, and others.[3] Sutherland[4] in speaking of the extrinsic evidence or reliable evidence rule says:

> What is called the extrinsic rule accords to the enrolled bill prima facie presumption of validity but permits attack by "clear, satisfactory, and convincing" evidence, establishing that the constitutional requirements which the court deems mandatory have not been met.

This rule appears to me to be consonant with our constitutional duty, whereas sustaining legislation by presumption is not.

In relying on *Ritchie v. Richards*[5] to sustain the affirmative contradiction rule, we rely on an opinion which was written in an era when the telephone was a novelty. Can we say the court, in *Ritchie*, would not have availed itself of the sophisticated electronic recording methods we have today, had such been available to it.

The main opinion speaks disparagingly of the voice records. I submit the same discredit can, with more force, be directed to the journal, because of its failure to keep a record of the proceedings, as required by the Constitution.

---

**3.** *State v. Freeman*, Okl., 440 P.2d 744 (1968); *Keenan v. Price*, 68 Idaho 423, 195 P.2d 662 (1948).

**4.** Sutherland, Statutory Construction, Sec. 15.-06.

