Hitchcock, J.
The record in this case shows that after the lessors of the plaintiff had exhibited testimony to show that John Kidd died seized of the premises in controversy, and that they were his heirs, the defendants to prove title out of the lessors of the plaintiff, and if possible in themselves, offered in evidence the will of John Kidd, a deed from his executors to Lewis Williams for a part of the premises, and also a deed to Elijah Pearson, from the same executors, for the residue of the premises in controversy. This ■ latter deed was accompanied by an abstract or copy of proceedings in the Court of Common Pleas, which resulted in an order to make the deed. These were all objected to, but the objection was overruled and the documents admitted. This is assigned as one of the errors of the Court. This assignment is not relied upon in argument, and I suppose it is abandoned. If it were not, there is certainly no good ground upon which this testimony could be objected to. The deeds were executed according to the forms of law, and the copy or transcript of the proceedings of the Court duly certified. The testimony was competent; as to its effect, that is a different question.
The record further shows that John Kidd made his will on *179 the 22d of September, 1818, and that the will was approved in the proper Court on the 16th day of February, 1819. The deeds to Williams and Pearson were executed in 1820. It further appears that.Lewis Williams was the husband of Phillis Williams,, one of the lessors of the plaintiffs, that he came into the State at the request of John Kidd, and resided upon lot number 155, which was afterwards conveyed to him, until and at the time of the death of Kidd. That at' the time of the conveyance to Williams, the estate of Kidd was supposed ■ to be free from incumbrance, abundantly able to pay all the legacies, and that an amount of six or seven thousand dollars would be left for distribution among poor relatives. These facts are not embodied in the bill of exceptions, but they are derived from depositions .therein referred to, and made part thereof.. From the same source the fact is derived that upon his death bed the testator directed his executors to convey this identical land to Williams. It is objected to by the counsel for plaintiff, that this latter fact cannot be taken into consideration in determining the case, and undoubtedly it cannot. It would have been rejected on the trial had it been objected to. But although it can have no influence in the determination of the case, it shows that the executors supposed they-were carrying out the wishes and intentions of their testator.
After the testimony was closed, the plaintiff requested the Court to instruct the jury, that by the language of' said will of John Kidd, the fee simple did not become vested in the executors of the said John Kidd; and that said fee descended to, and became vested in his heirs at law, on the death of John Kidd. This instruction the Court refused, but did instruct the jury that by the will, the executors were vested with the fee, and that the same did not descend to the heirs. In this, it is claimed that the Court erred; and this assignment presents the principal question in the case, and it is a question that must be determined by a proper construction of the will.
In the instructions given by the Court to the jury, it was held that under the will of Kidd, his executors were vested with *180 power to sell and convey his real estate. This ruling was ex-t0j but no*: assigned for error; and it seems to me that one could for a moment doubt that this power, at least, was conferred. But whether the power thus conferred is coupled with an interest, so as to vest the executors with a title to, or fee in the land, is a different question, and the one which is to be settled by the will. ■
In construing a will, the great object is to ascertain the intention of the testator, and this is to be gathered from the phraseology of the will itself; and in order to arrive at this intention, it is necessary to look into the whole instrument. It will not do to seize upon an isolated passage, and give it a controlling effect. Rules of construction, as recognized in the books, should be adhered to, and resort may be had to decided cases. But these cannot be conclusive, as it is not to be expected that any two wills will be exactly alike. After all, the sound judgment of the Court, in any given case, must be relied upon, to ascertain the meaning of the testator, from the language which he has employed.
The particular clause in the will of Kidd, which, as is claimed by the counsel for defendants, gives to the executors a power to sell his real estate, coupled with an interest in that estate, is the following: “ I hereby constitute and appoint my friends, the Rev. Joshua L. Wilson, and the Rev. Oliver M. Spencer, the executors of this my last will and testament, giving them full and complete power as I myself possess, after my decease, to dispose of all my estate, real, personal, and mixed, in the way and manner which they may think best calculated to carry into effect all the purposes specified in this my last will and testament ; except that no part of my estate shall be sold at public sale.” This, certainly, is strong language. The same power is given to the executors, after the decease of the testator, to dispose of his estate, which he himself had during his life time. This is the evident meaning; and they. are authorized to dispose of it, “ in the way and manner which they may think best calculated to carry into effect all the purposes specified,” *181 &c. — an unlimited discretion to dispose of the property. Under this, may they not sell and convey ? may they not lease ? It is their duty to effect the objects specified in the will, but manner in which it is to be done, is left with them to determine. There is no restriction upon the disposition of the property, except that no part of it “ shall be sold at public sale.”
The counsel for plaintiff in error, contend that the word “ dispose,” used in this connection, does not mean to. sell, but that some other meaning must be attached to it. But the testator understood the word to mean this, at least, else why did he use the limitation at the close of the paragraph, “ except that no part of my estate shall be sold at public sale” ? If not to be sold at all, certainly nothing would have been said about public sale. In the ordinary-, and according to the common understanding of the wofd, the power to dispose of property, must be considered as a power to sell it; and when this entire paragraph is considered, it seems to me that an interest in the property itself is conferred, as well as a power to sel land convey it; that the intention of the testator was to vest the property in the executors, as it was vested in himself, it being their duty, however, so to manage, so to dispose of it, as to carry into > effect the purposes specified in the will. This intention is as clear as it would have been had the realty been devised to the executors to be sold; in which case, I suppose, there could have been no doubt.
The opinion that this is the true construction of this clause of the will, is strengthened by an examination of the entire instrument. In the first part of the instrument, the testator appropriates the rents of lot number 401, amounting to one thousand dollars yearly, to the education of poor children, and the executors are clothed'with ample discretionary power to carry out this bequest. The lot was leased for ninety-nine years, renewable forever. The reversionary interest remained in the testator, but by the operation of the, will, it was transferred to the executors; and they were authorized “ to convey the same by will or otherwise, to any corporation formed for literary pur *182 poses,” &c. There is, I believe, no controversy, but that the of lot number 401, or rather the reversionary interest, be-vested in the executors.
After making this disposition of this particular lot, and the rents issuing therefrom, the testator goes on to give legacies to a number of collateral relations to the amount of twenty thousand dollars or more. Some of these legacies are to be paid in money, in others, the amount is to be vested in land, and where the legatees are not of full age, the money is directed to be invested in land, but the land is not to vest in the legatee until of full age. Until such time, it must, as I suppose, vest in the executors, as it is to be purchased by them, or under their direction.
Money was to be raised for the payment of these legacies, in what manner the testator does not inform us. After having given his directions as to lot number 401, nothing is said about the disposition of any property until we arrive at the clause first commented upon. As the testator riiade no other provision for the payment of these legacies, it is but reasonable to suppose that when he gave the same power to his executors to dispose of his estate after his decease, that he himself had while in life, he intended that the same should be sold or otherwise disposed of, as might be best calculated to carry into effect all the purposes specified in the will, as well the payment of these legacies as other matters .specified. ’ Having made these bequests, the testator next directs, that if the estate should not be sufficient to satisfy them in full, they should be paid in proportion to the real value or amount of the estate. Then follows the following clause, “ If my estate should be more than the amount of the above bequests, my request is that my executors distribute the surplus among my surviving relatives, whom they may judge to be the most needy, and they are to use their discretion as to this distribution, either making it in money, or the necessaries and comforts of life.” ■
This paragraph furnishes additional evidence of the intention of the testator, that his entire property was to be at the control *183 of his executors, to be by them, if in their discretion they deemed necessary, converted into money, and in a certain contingency a part of the money to be appropriated to the necessaries and comforts of life, for such of his needy relatives as they might deem proper.
It seems to the Court, that taking the whole will together, it furnishes a strong case, of a power conferred by will upon executors to sell real estate, and that this power is coupled with an interest. A much stronger case in fact, than the case of Dabney v. Manning, 3 Ohio R. 321; and upon careful examination we are brought to the conclusion that the Court did not err in instructing the jury, that by force of the will of John Kidd the premises in controversy were vested in fee simple in his executors, and did not descend to his heirs. If this be so, it follows that the lessors of the plaintiff had no title to the premises, and of course could not recover.
There is, however, another error assigned, which is that “ the Court refused to charge the jury that the said will did not authorize the executors to make the deed to Lewis Williams.”
It seems to us that there was no impropriety in refusing this charge. It was, in fact, for the purposes of this case, immaterial, whether or not that deed was made in conformity with the will. The fee being vested in the executors, if they made an improper disposition of it, it would not, in consequence of such improper disposition, vest in the heirs. The grantee might take the estate subject to all the trusts which attached to it in the hands of the executors, and a Court of equity might reach it, in his hands, for the purpose of appropriating it in accordance with those trusts. But all this has nothing to do with this case. The question here is, whethei; the fee simple interest in these premises descended to the heirs of John Kidd, or whether it passed by his will to his executors. We are of opinion that the latter is the case.

The Judgment of the Supreme Court is Affirmed.