Wright, J.
The controversy is about a boundary line, between Smith and McKay. Upon this Hue it appears a fence ivas put up by Bates, but not long enough ago to occasion a bar by the statute of limitations. But it is claimed by defendant that this fence stood upon a line, marked by blazed trees forty or more years ago, and which line the parties themselves had adopted. It is necessary, therefore, first to see if the defendant can sustain himself, upon the evidence, as to this blazed line.
The Smith tract lies in the northwest quarter of the section, the west line of the section being the west line of the tract. On the south of Smith lay Goshorn’s ten acres on the west side of the section. On the south of Smith, upon his east line, which was the half section line, lay Phillips. Between Goshorn and Phillips lay McKay, and the north line of Goshorn and Phillips is what McKay cláims to be his north line, and it is the line of the Bates fence. There is no dispute as to Goshorn and Phillips’ locations. The deed to Phillips is from Hoffner, and dated in 1844. It begins at a certain point and runs north to “Ur. Wm, Smith’s southeast corner, which is a beech tree.” This beech tree, therefore, marked the southeast corner of the Smith tract in 1844.
The Phillips’ tract was a part of Hoffner’s, who originally held all south of Smith, and through whom Goshorn, Phillips and McKay claim. Hoffner says in his testimony : “ Ur. Smith and I commenced at the creek at the southwest corner of Ur. Smith’s, my northwest corner, at the west end of the Goshorn tract. Then we took a line according to surveys then presented by the line fence and the blaze. From the end of the fence the line was plainly marked till we came to the northeast corner of my tract; there we found a beech, tree and a stake, and there we put a stone, and that was there last September. Ur. Wm. Smith and I and a surveyor were present.”
This transaction appears to have taken place at the time Hoffner conveyed to Goshorn in 1838. Hoffner in his deed, therefore, of 1844, calls for a beech, the southeast' corner of *413 Dr. Smith. This heech Hoffner and Smith fix as a corner,, marked by a stone, as early as 18-38. This beech therefore fixes one point in the disputed line, so as to be beyond mistake. Defendant McKay testifies as follows : “ I am defendant in one of these cases. I have known this land for five years. I first saw the land in December, 1867. Boake gave me a plat, and I examined the line from the northwest corner of Graham’s tract. The line was straight to-Kirby’s. At the east end at Kirby’s I found a stone near a heech. I then followed the line to a stone. That was the east line of Phillips’;. also a parallel fence, the west line-of Phillips’. "When I got there, on the day after General Grant’s election, Dr. Smith was moving the fence. He moved it down to where it is now. He moved the fence-230 or 240 feet further south.”
This locates the beech upon the half section line, which is also the Kirby line, Smith’s east line.
Speaking of the Bates fence, which was the one plaintiffs removed, ¥m. T. Roller testifies as follows: “The fence was built just about where the old blazed line was. I have seen it, and have heard Dr. Smith say it was the line. About 1830, or before, father was about buying from Burrows. Dr. Smith showed him the line as his south line. They started from the northwest line on the section and township line and went through to Kirby’s line. I have-been from one end of that blaze to the other. Here and there were trees blazed, and with three notches for centre when the line strikes a tree. I have known that blaze ever since I was a boy. The present fence is ten to fifteen rods-from the blaze, and the fence Dr. Smith moved was on the blazed line. I was with John G. Smith, and we met Bates, on the hill, and it came up between them about the fence; Smith said he would furnish the timber and Bates was to-do the work, and Bates said he would ; it was to be a line-fence. It was built in a few weeks afterward. I think it mnst have been June, 1848 ; I would not swear point blank. Erom Goshorn’s, the fence ran on a straight east and west: line to Christian Dick’s fence. I think Dick built in 1845.”'
*414 On cross-examination he says: “ My father and Dr. Smith had come in 1827 or 1828. I was about seventeen or eighteen years old. There was a blazed line through, for I was along with my father and Hr. Smith when they went through. . We started from the corner on the township line, near there a beech tree, and so on blazes, for I went through and heard father and him talk. That was agreed on as the line. They went through to the half section line. We went from there to my father’s. We got to a stake on the half section line. The property owned afterwards by Kirby was owned then by Hutchinson.”
Welland Campbell has lived in Mill Creek township since 1812. He and his father cleared the Goshorn tract, and built a fence there in 1832 which marked the line between Smith and Goshorn. This fence was taken away by the Smiths at the same time McKay’s was removed, and a litigation arose, similar to the present one. With reference to fencing this ten acre tract of Goshorn’s, Campbell says: “ My father went by a blaze that was there. The blazes were plain to be seen. I have traveled through there by the blaze. I never heard a dispute about the line. The blaze ran as far as Hutchinson’s line, that is now Kirby’s. It began at the township line. The corner was marked by a stone on the township line. I know when the Bates fence was built; could not say what date; it was right on the blaze. The fence at the north end of Dick’s five acre tract was put on the line. Dick and Phillips built the fence pretty soon after they bought; they bought ten acres of Hoffner.”
Charles Shepherd says : “ I have lived on Dr. Smith’s place, and farmed it. There is a line through there of blazed trees. There was a fence built by Welland Campbell; father and Welland Campbell himself, on that line. . . . Campbell cultivated south of the fence. I do n’t know that he owned it at that time. I do n’t know who blazed the line. The blazed line went clear down to Kirby’s fence.”
Nicholas Goshorn, son of David Goshorn, says: “ I re *415 collect a short time after father bought the land (summer following, I think), of Hoffner, the old Doctor Smith came there. There were some trees standing in the corners of the fence on the north side, and father asked him who they belonged to. Smith said he did not know. Then Smith, father, and I went back to the northwest corner of the ten acre tract to get the range of that line; they followed it through as near as they could. There were trees blazed there on the north side of the fence, and some in the corners. My recollection is that there were trees blazed along the line beyond the end of the fence; there was a stake drove at the northeast corner of the ten acre tract in the line of the fence extending east. My recollection is it was blazed clear through to Smith’s east line; I know it was blazed beyond our east line, but I never examined it clear through; Dr. Smith told father he might cut those trees north of the fence, as he thought the fence was a little over on our land.”
This evidence seems to indicate that there was a blazed line marking the south line of Dr. Smith many years ago, more than twenty-one years prior to 1868, when plaintiff removed the fence. This blazed line marked the north line of Goshorn on the west, and Phillips on the east, running through the woods between the two; also it runs to Phillips’ northeast corner, which is Smith’s southeast corner, and so called in 1844.
, In addition to the evidence furnished by the blazed line, it also appears that Hoffner, who owned south of Smith, with him fixed the line between them as early as 1838, when the conveyance was made to Goshorn.
Hoffner says: “ Goshorn’s deed was made on the 1st of January, and acknowledged May 24,1838, and it took that time to make arrangements to get Smith out there in the mud. I had not had the land surveyed. I am not positive, but I think---was the surveyor. We run the line clear through, and Dr. Smith put down a stone. Neither of us knew by actual survey what either of us had. We were running a division line. At that time the Goshorn. *416 fence, put up by Campbell, was- the only fence built. Dick and Phillips’ was the next sale that joined the Smith line. All surveys were made from Smith’s line; in making our surveys we commenced there. I first sold to Goshorn, and then south of Goshorn all my sales were on the line. Ur. Smith’s line was my north boundary. I sold all there was-to that line. When I bought, I got the residue of the land more or less, and from that land I established the line when I sold to Goshorn. We sold in accordance with that line, measuring from there. I began to sell at the line. Gos-horn lived right by, and the surveyor was brought; he and I both thought best to advise with Ur. Smith, and fix the line with him. The surveyors took the north line, Smith’s-south line, and went south to the section line. I continued to sell till I got the Bates land left, and a measurement showed the quantity.”
From this evidence, we conclude that the. north line of the Smith tract was marked by a blazed line, at a very early period. Goshorn’s fence was built upon it as early as 1882. The line of blazes marked the entire south line of the Smith tract.
All this laud of Smith’s and that to the south of it, in early times was mere woodland, and it is necessary to see if McKay and those under him had such possession up to-the blazed line, as would confer title by occupancy. There was no actual possession upon the particular premises in controversy, by building houses or other improvements, except the Bates fence, which was not twenty-one years old when removed by plaintiffs. There is evidence that Bates chopped wood on the south, up to the line, and Smith, on his side, did the same. Hoffner, from whom those on the south side claim, did sell ten acres to Goshorn, on the -west, selling up to the blazed line, and did the same to Phillips, on the ea^t. • This is a case then of possession under a deed, and in such ease we understand the law to be that such possession is co-extensive with the limits described in the deed. The authorities cited by counsel for defendant in error abundantly establish this proposition. •
*417 In Gardner v. Gooch, 48 Maine, 487, 492, it is said :■ “ Where a grantee is in possession of any part of the granted premises, under a recorded deed, he is presumed to be in possession of the whole, unless other possessions or facts show the contrary.”
So in the case of Prescott v. Nevey, 4 Mason, 326, the syllabus is: “Where a person enters into possession, under a recorded deed, claiming title to the entirety, and exercises acts of ownership, it is a disseisin of all person s-who claim title-to the same land, to the extent of the boundaries in the deed.”
To the same effect is Bailey v. Carleton, 12 N. H. 1; Ellicott v. Pearl, 10 Pet. 412; Fairman v. Beal, 14 Ill. 244, and other cases cited.
This proposition of law, as applied to this case, shows-, that Hoffner, being in possession actually of part of his tract, was in possession of the whole, as described in his deed. Iloffner’s deed calls for Williamson’s,’which is the same as Smith’s, on the north. When, therefore, we find that north line by the blazed trees, so often spoken of, the-possession and its extent is determined.
Or again, where parties agree upon a dividing line, and occupy accordingly, for a period sufficient to’ confer title by limitation, the title becomes fixed upon that line. Watt v. Ganahl, 34 Geo. 290 ; Hodges v. Eddy, 38 Vt. 345.
In Bobo v. Richmond, 25 Ohio St. 115, it is said: “We hold the principle to be well settled that an agreement upon a division line between adjoining landowners, different fr.om the true line, the true line being a certain, and not a disputed line, and acquiescence by all the parties in such agreed line, for a length of time that would bar a right of entry under the statute of limitations in relation to real estate, would operate to prevent a party purchasing-from one of such owners, with notice of the agreed line, from setting up a claim to any line other than that agreed upon, although the occupancy had not -been such as, aside-from the making of the agreed line, would amount to a. *418 «ontimious possession of the entire premises up to the agreed line, for the whole time.”
And when two parties hold, up to the division line, for a ■sufficient length of time, the effect of the statute is not obviated, though such holding was through mutual mistake, as is held in Yutzer v. Thoman, 17 Ohio St. 180; although the case in 86 Mo. seems to the contrary, and, perhaps, those in 5 Mo. and 28 Mo.
The evidence satisfies us that Hoffner and Smith did adopt the blazed line as their division line; they occupied .accordingly, for a period of time much longer than that •required by the statute of limitations, and that line can ¡not now be disturbed.
We, therefore, find no error in the record, and the judgment is affirmed.
Ashburn, J., dissented from the judgment.