STATE of Oklahoma ex rel. G. T. BLANKENSHIP, Attorney General, Plaintiff,

v.

Harold FREEMAN, Chairman, Corporation Commission of Oklahoma, Defendant.

STATE of Oklahoma ex rel. G. T. BLANKENSHIP, Attorney General, Plaintiff,

v.

Ray C. JONES, Member, Corporation Commission of Oklahoma, Defendant.

No. 42709.

Supreme Court of Oklahoma.

Nov. 14, 1968.

Rehearing Denied Dec. 10, 1968.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for plaintiff.

J. A. Rinehart, El Reno, D. E. Martin, Tulsa, W. D. Hart, Pauls Valley, for defendants.

IRWIN, Vice Chief Justice.

The proceedings under review are a continuation of State ex rel. Blankenship v. Freeman, Okl., 440 P.2d 744. In that case, the Attorney General of the State of Oklahoma, filed two original proceedings in this Court, in the nature of quo warranto, seeking a judicial determination that certain acts committed by Harold Freeman and Ray C. Jones, while members of the Corporation Commission of Oklahoma, constitute a forfeiture or vacation of their respective offices. The Attorney General will be hereinafter referred to as State and Harold Freeman and Ray C. Jones will be referred to as defendants unless specifically named.

The proceedings in 440 P.2d 744, were based entirely upon evidence gathered by the Senate Investigating Committee authorized by the Legislature of the State of Oklahoma. A transcript of those proceedings was not filed in 440 P.2d 744. However, this Court did determine that if such transcript were filed, we could not, through the medium of judicial notice, accept as evidence on the contested fact is-sues presented, any adjudicated facts either elicited or predetermined by the Senate Investigating Committee. We also determined the legal issues presented by the pleadings of State and defendants' answers in those cases and set forth guide lines for further proceedings. In the Disposition portion of the opinion promulgated in 440 P.2d 744, we said:

"* * * State is authorized to submit, within twenty (20) days after this opinion becomes final, a designation of those parts of defendants' testimony which are deemed to constitute admissions against interest and whose formal introduction will be sought, together with a list of documents it will seek to offer after proper identification. Defendants are granted twenty (20) days thereafter to file objections to the portions so designated and to the exhibits sought to be admitted.

"After the designation and objections thereto, if any, have been filed, the parties will advise this Court if they desire to produce further evidence. If evidentiary proceedings are requested or are necessary, this Court will provide by order the proper forum for such proceedings.

"Application to assume original jurisdiction granted; proceedings continued as herein specified."

Pursuant to the authorization above set forth, State filed its designation of that portion of the transcript of the proceedings before the Senate Investigating Committee that it would seek to admit in evidence on further hearing of the issues involved. Without detailing those portions of the transcript designated, we will assume that all of the evidence designated by State is admissible and is admitted in evidence in these proceedings, except Standard and Poor's Cooperation Report which State concedes is not admissible. Based upon such evidence and a deposition and a stipulation filed by the parties, we will determine the issues presented.

In the original proceedings filed in this Court, State alleged four counts against de-

fendants as grounds for forfeiture or vacation of their respective offices. Disposition of two of the counts was made in 440 P.2d 744, and the alleged grounds contained in such counts for forfeiture or vacation of office are not presented in these proceedings. The material allegations of the remaining two counts may be summarized as follows:

"That defendants, while members of the Corporation Commission, acquired and owned (1) stock in Livingston Oil Company, a pipe line company operated for hire, (2) stock in oil and natural gas companies, and (3) substantial holdings in oil and gas properties in the State of Oklahoma; and that all of the acquisitions and ownership constitute violations of and are prohibited by Article IX, § 16, of the Constitution."

Before considering or determining the issues presented, we deem it appropriate to first note that State neither alleges nor contends, either directly, indirectly or by implication, that defendants, or either of them, have been improperly influenced or have acted improperly in the discharge of their official duties as Commissioners by reason of ownership of any properties. In other words, State does not contend that defendants, or either of them, have acted improperly in the discharge of their official duties, but contends defendants have forfeited or vacated their respective offices by acquiring certain properties, while members of the Corporation Commission, which the Constitution prohibits a Commissioner from acquiring.

Article IX, § 16, of the Constitution, (divided herein for clarification) inter alia, provides:

(a) " * * * nor shall such commissioners, or either of them, be, directly or indirectly, interested in any railroad, street railway, traction line, canal, steam boat, *pipe line*, car line, sleeping car line, car association, express line, telephone or telegraph line, *operated for hire*, in this State, or out of it, or any stock, bond, mortgage, security, or earnings of any such railroad, street railway, traction line, canal, steam boat, pipe line, car line, sleeping car line, car association, express line, telephone or telegraph line, compress or elevator companies; *and if such Commissioner shall voluntarily become so interested, his office shall become vacant;*"

(b) " * * * *and shall not, while such Commissioner, engage in any occupation or business inconsistent with his* duties as such commissioner." (emphasis ours).

In considering State's contentions in 440 P.2d 744, that by becoming interested in the shares of stock of various oil companies, a natural gas company, and in a pipe line company operated for hire, and by acquiring holdings in oil and gas properties, defendants have forfeited or vacated their respective offices under paragraph (a), supra, we said:

"Under paragraph (a), supra, Corporation Commissioners are prohibited from becoming voluntarily interested in the stock or earnings of fourteen types of companies or associations, operated for hire. Stock in, or earnings of, oil or natural gas companies, or the acquisition of oil or gas properties, does not fall within the purview of the prohibitory provisions of paragraph (a), supra.

"Becoming voluntarily interested in the stock of a 'pipe line company * * operated for hire' comes within the prohibitory provisions of paragraph (a) supra. Therefore, if a Corporation Commissioner has become voluntarily interested in the stock of a 'pipe line company * * * operated for hire', under the mandatory language of § 16, supra, 'his office shall become vacant'."

State contends that Livingston Oil Company is a "pipe line company, operated for hire", and since defendants acquired stock in Livingston Oil Company they have forfeited or vacated their respective offices.

The record reflects that Livingston Oil Company owned all the outstanding stock in three subsidiary companies and we will

assume, arguendo, that one or more of these subsidiary companies could be considered a "pipe line company, operated for hire". State contends that if one or more of these subsidiaries is "a pipe line company, operated for hire", then Livingston Oil Company is "a pipe line company, operated for hire."

The record discloses that Livingston and the subsidiaries had separate officers. Although the directors of the subsidiary companies were either officers or directors of Livingston Oil Company, there is no evidence that the subsidiaries were organized as a design or scheme to perpetrate a fraud, or that the subsidiary companies were organized and their affairs conducted in such a manner that they were a mere instrumentality or adjunct of Livingston Oil Company.

In Gulf Oil Corporation v. State, Okl., 360 P.2d 933, we held:

"It is a general rule that a corporation is a distinct legal entity separate and apart from other legal entities, but such distinct legal entity may be avoided if it appears from an examination of the entire facts that the separate corporate existence is a design or scheme to perpetrate a fraud, or that one corporation is so organized and controlled and its affairs so conducted that it is merely an instrumentality or adjunct of another corporation."

■ From an examination of the record we can find no evidence or reason why the general rule that a corporation is a distinct legal entity separate and apart from other legal entities, should not be applicable in the case at bar. We therefore hold that if Livingston Oil Company is in fact a "pipe line company, operated for hire", it must be by virtue of its own operations and not by virtue of the operations of its subsidiaries.

State's contention that Livingston is "a pipe line company, operated for hire", is based primarily on a lease contract between Livingston and a refining company, which involved the construction of a gathering system by Livingston and a lease agreement leasing the gathering system. This was a private agreement between Livingston and the refining company and such agreement was never filed for record in any public office. There is undisputed testimony that this agreement was not designed and was not executed "for the purpose of subterfuge to try to operate a common carrier pipe line for hire without complying with the statutes", but "the lease agreement was executed and the oil gathering system was constructed in order to permit Livingston to move the crude oil it produced and was producing in the Northwest Ringwood Oil— Northwest Ringwood oil field at costs lower than Livingston then bore growing out of transportation by truck."

The parties filed a stipulation containing the following:

"That Livingston Oil Company at no time complied with Title 52 O.S.A.1961, or any of the sections thereof applying to oil pipeline common carriers for hire or with any of the sections of said title known as 'Production and Transportation Act of 1913', applying to common carrier gas transportation pipelines operating for hire, and that Livingston Oil Company did not apply before the Corporation Commission of Oklahoma as a common carrier pipeline company for hire for the transportation of either gas or oil.

"That Livingston Oil Company did not at any time comply with the provisions of Title 68, Sec. 15.28 O.S.A., 1961, (now Sec. 2447 O.S.Supp.1967) relating to assessment of pipelines for taxes with the State Tax Commission at the state level as is required in taxation of common carrier pipeline companies operating for hire. That neither the Tax Commission nor the State Equalization Board ever did assess any of the gathering lines of said company as common carrier pipelines operating for hire."

If Livingston Oil Company is a "pipe line company, operated for hire" it is by virtue of its construction of the gathering

system and the lease agreement with the refining company. Livingston has never represented itself to any state department or commission as being a pipe line company nor has any state department or commission recognized it as a pipe line company. Livingston has never complied with any statutory provision relating to pipe line companies nor has any state department or commission requested it to comply.

If, in fact, the business activities of Livingston Oil Company would make it "a pipe line company, operated for hire", which fact we do not herein determine, the record will not support a finding that defendants, or either of them, knew, or should have known, that Livingston Oil Company was in fact "a pipe line company, operated for hire".

■■ If the construction of the gathering system and the execution of the lease agreement by Livingston, would make it "a pipe line company, operated for hire", we are of the opinion that defendants' acquisition of stock in Livingston would not fall within the prohibitory language of paragraph (a), supra. The prohibitory language contained therein requires that defendants "shall voluntarily" become so interested. Although defendants may have *voluntarily* acquired stock in Livingston, this does not necessarily mean they *voluntarily* acquired stock in "a pipe line company, operated for hire". To hold that defendants voluntarily acquired stock in "a pipe line company, operated for hire", would be tantamount to holding that defendants knew or should have known that Livingston was "a pipe line company, operated for hire". The facts and circumstances presented here would not justify a conclusion that defendants *voluntarily* became interested in "a pipe line company, operated for hire", even though the record might justify a conclusion, which we do not determine herein, that Livingston Oil Company is "a pipe line company, operated for hire".

We hold that defendants' acquisition of stock in Livingston Oil Company is not within the prohibitory language of paragraph (a), supra, and they have not forfeited or vacated their respective offices by acquiring such stock.

■ We will now determine whether defendants have forfeited or vacated their respective offices for violation of paragraph (b) supra, for acquiring and owning stock in oil and natural gas companies. The record is barren of any evidence which would sustain a finding that defendants' acquisition and ownership of stock in any oil or natural gas company, constitute engaging "in an occupation or business inconsistent with their duties as such commissioners", within the general rule of guidance for making such determination set forth in 440 P.2d 744. We therefore hold that defendants' acquisition and ownership of stock in oil and gas companies does not fall within the prohibitory language of paragraph (b) supra, and they have not forfeited or vacated their respective offices by reason of such acquisition and ownership.

We will now determine whether defendants, or either of them, have forfeited or vacated their respective offices under the prohibitory language of paragraph (b) supra, for acquiring and owning oil and gas properties. Since there is a material difference between the evidence adduced against each defendant we will consider this proposition against each defendant separately and we will first consider the proceedings with reference to Jones.

That portion of the transcript designated by State concerning its allegation that Jones had acquired and owned substantial interests in oil and gas properties in Oklahoma is somewhat indefinite in many respects. It appears that Jones submitted to the Senate Investigating Committee an itemized report showing a description of his assets, when they were acquired, and their approximate values. In examining Jones, Counsel for the Senate Investigating Committee referred to the report but if such report became a part of the transcript of such proceedings this Court does not

have the benefit of such report for the reason State did not designate it as a portion of the transcript to be admitted in this proceeding. From a review of that portion of the transcript designated by State it would appear that Jones has had or has the following interests in oil and gas properties.

(1) Inherited a ⅛₄th royalty interest in Payne County from his father's estate before he became a commissioner. The estimated value of this interest is $3,000.00. The number of acres is not shown but Jones testified that this interest was worth considerable more money when he became a Commissioner in January, 1947, than it is now.

(2) In 1950, Jones acquired a ⅟₃₂nd working interest in a lease in Payne County. Two wells were drilled on this lease and Jones's share of the cost of each well was approximately $1,000.00. The acreage in this lease and its value are not disclosed.

(3) In 1961, Jones acquired a ⅛th working interest in a well in Pawnee County. This well is on a 10 acre location and his interest cost $1,388.34 and "it turned out to be a small producing well, very small".

(4) Jones acquired a ⅟₃₂nd working interest in a lease in Logan County, from which he receives "around $6.00 a month". The acreage in the lease, its costs, and the date of its acquisition are not disclosed.

(5) About 12 years ago, Jones's wife acquired a working interest in a lease and he testified that "she took it in her name and she paid for the interest in the lease and the first well that was drilled $3,500.00." In 1965, this entire lease operation was sold to a company for "the purpose of water play". Jones testified that "my part of the interest amounted to some $20,000.00, of which part of it was paid in cash and the balance to be paid out of an oil payment, a ⅟₁₆th of the working interest, and it has not been too successful, the monthly check on that is around $40.00, so it will never pay out the amount of the oil pay-

ment". Another portion of the transcript would indicate the amount of cash received by Mrs. Jones for this sale was $8,740.88. Jones said the source of the funds for the purchase by his wife came from a sale of a building she had inherited before they were married, which was sold in 1946 and the proceeds invested in U. S. Bonds. It appears that six or seven wells were drilled on this lease and money was borrowed from a bank to continue the drilling operations.

If either Jones or his wife acquired or owned any other oil and gas interests, such interests are not disclosed in that portion of the record designated by State.

■ In 440 P.2d 744, we held:

"Ownership of stock in an oil or gas company, or the acquisition of oil and gas properties by a Corporation Commissioner, does not, under all circumstances, constitute 'engaging in an occupation or business inconsistent with his duties as such commissioner'; but such ownership and acquisition, may or may not be 'inconsistent with his duties as such commissioner', depending upon the facts and circumstances.

"If an occupation, business activity or business activities, in which a Corporation Commissioner participates or with which he is connected, operates as an effective interference with the discharge of the functions of his office, he shall be deemed to be 'engaged in an occupation or business inconsistent with his duties as such commissioner.' 'Effective interference' as above employed, means any interest in any occupation, business activity or business activities, which is affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction."

Title 17 O.S.1961, § 52, provides:

"All authority and duties now conferred upon the Corporation Commission or other departments of the State government in reference to the conservation of oil and gas and the drilling and operating oil and gas wells * * * are

hereby conferred exclusively upon the Corporation Commission."

■■ The general business of drilling and operating oil and gas wells is affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction. However, we are here concerned with the business activities of Jones and not with the general business of oil and gas production; and, under the rule announced above, the mere acquisition of oil and gas properties, does not, under all circumstances, constitute engaging in a business activity which is affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction. If the interests of Jones in the oil and gas properties do not constitute a business activity, or the extent of his interests are such that they are not affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction, then Jones is not engaging in a business activity inconsistent with his duties as a commissioner. There is no yardstick for measuring what would constitute engaging in a "business activity" or what "interests" are affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction, but the determination of such issues presents purely a question of fact.

We may not overlook the fact that Jones does own certain interests which have been or may be affected by the Corporation Commission's exercise of its jurisdiction, but these facts alone do not bring his interests within the general rule of guidance herein set forth. His interests, or the extent of his interests, must be such that they constitute engaging in a business activity or such that they are *affected in a meaningful manner* by the Corporation Commission's exercise of its jurisdiction.

We have carefully examined and weighed all the evidence and such evidence will not justify a finding that Jones's acquisition and ownership of oil and gas properties constitute engaging in a "business activity". Also, the evidence will not justify a finding that the extent of Jones's interest in oil and gas properties in such that such interests are affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction. We therefore hold that Jones has not forfeited or vacated his office by reason of the acquisition and ownership of the oil and gas properties.

■ We will now consider whether Freeman has forfeited or vacated his office by reason of the acquisition of oil and gas properties. We find it unnecessary to set forth in detail Freeman's business activities in acquiring oil and gas properties or the extent of his ownership in such properties. It is sufficient to state that in considering their value (the same being in excess of $600,000.00, of which more than $500,000.00 have been acquired since he became a Commissioner), the amount of money expended for such interests and the income derived therefrom, we can only conclude, as the trier of the facts, that Freeman's interests are such that they constitute "engaging in a business activity" and the extent of his ownership is such that his interests are affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction. We therefore hold that Freeman has forfeited or vacated his office as a member of the Corporation Commission by reason of his acquisition and ownership of oil and gas properties.

It is the judgment of this Court that Harold Freeman has forfeited or vacated his office as a member of the Corporation Commission and is adjudged to have no legal right to hold or occupy the office of Commissioner of the Corporation Commission, or to perform the duties thereof.

The parties herein are granted until November 22, 1968, to file Petition for Rehearing. If none is filed, this opinion shall become final and effective at the close of the Corporation Commission's business day on November 22, 1968. Should a Petition for Rehearing be filed in Case No. 42,709, as such case stood before consolidation, this opinion shall be final and effective as to Harold Freeman and State, the day imme-

diately following the day this Court makes its final disposition on Rehearing in Case No. 42,709. Should a Petition for Rehearing be filed in Case No. 42,710, as such case stood before consolidation, this opinion shall be final and effective as to Ray C. Jones and State the day immediately following the day this Court makes its final disposition on Rehearing in Case No. 42,-710.

Neither the promulgation of this opinion on this date nor anything contained herein shall be deemed to invalidate any official act of Freeman performed as a Commissioner prior to the effective date of this opinion as above set forth. See State ex rel. Rucker v. Tapp, Okl., 380 P.2d 260; and Rule 40 of the Rules of the Supreme Court (Title 12 O.S.1961, Chapter 15).

Judgment as prayed for against Harold Freeman granted;

Judgment as prayed for against Ray C. Jones denied.

JACKSON, C. J., and DAVISON, MARMADUKE, BLACKBIRD, RUTH, HODGES, LAVENDER and McINERNEY, JJ., concur.

WILLIAMS and BERRY, JJ., having certified their disqualification in this case, Honorable ARTHUR J. MARMADUKE, Duncan, Oklahoma, and Honorable JOHN A. RUTH, Kingfisher, Oklahoma, were appointed Special Justices in their stead.

## ORDER

JACKSON, Chief Justice.

In 440 P.2d 744, we construed Article IX, Sec. 16, of our Constitution and granted fifteen days to file a Petition for Rehearing and Briefs in Support thereof. No Petition for Rehearing was filed challenging our construction of Sec. 16, supra, and the cause was continued for further proceedings on the merits.

Further proceedings were had and the cause was submitted to this Court on its merits. On November 11, 1968, this Court rendered its opinion on the merits, (39 O.B.J. 2247). Freeman's Petition for Rehearing challenges the correctness of our opinion in 440 P.2d 744, and our subsequent opinion on the merits rendered on November 11, 1968.

We have re-examined our opinion rendered in 440 P.2d 744, and find that the same should not be withdrawn.

The Court finds that subsequent to the rendition of 440 P.2d 744, and prior to the time the cause was submitted on its merits, the parties orally waived, through counsel, a trial by jury. This Court further finds that when this Court determined that Freeman's interests are such that they constitute "engaging in a business activity" and the extent of his ownership is such that his interests are affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction, that it was acting in the capacity as the triers of fact; and as the triers of fact, we applied the general guidelines set forth in 440 P.2d 744, to the admissible evidence presented.

Article IX, Sec. 16, of our Constitution is only applicable to Corporation Commissioners and in 440 P.2d 744, we held the same to be self-executing.

Our decision rendered on November 11, 1968 (39 O.B.J. 2247), shall be final and effective at the close of the Corporation Commission's business day on December 10, 1968.

Petition for rehearing denied.