Dear Representatives Johnson,
¶ 0 The Attorney General has received your letter requesting an official opinion addressing, in effect, the following questions:
1. Is a Corporation Commissioner prohibited from beinginterested in an oil or gas pipe line and other oil and gasactivities?
 2. If a Corporation Commissioner must divest himself of an oilor gas pipe line interest or any other oil or gas interestsubject to regulation by the Corporation Commission, whatconstitutes divestiture and when must divestiture occur?
 I. GENERAL NATURE OF THE CONSTITUTIONAL AND STATUTORY PROHIBITIONS A. The Constitutional Prohibition
¶ 1 In establishing the qualifications of a Corporation Commissioner, Article IX, Section 16, of the Oklahoma Constitution specifies fourteen types of industries, including pipe lines, in which a commissioner cannot be interested:
 [N]or shall such commissioners, or either of them, be, directly or indirectly, interested in any
railroad, street railway, traction line, canal, steam boat, pipe line, car line, sleeping car line, car association, express line, telephone or telegraph line, operated for hire, in this State, or out of it, or any stock, bond, mortgage, security, or earnings of any such railroad, street railway, traction line, canal, steam boat, pipe line, car line, sleeping car line, car association, express line, telephone or telegraph line, compress or elevator companies[.]
Okla. Const. Article IX, Section 16 (for clarification, referred to herein as paragraph (a)). (Emphasis added).
¶ 2 Article IX, Section 16 also contains a provision that prohibits a Commissioner from engaging in a business inconsistent with his duties:
 Nor shall any such commissioner hold any other office under the government of the United States, or of this State, or any other state government, and shall not, while such Commissioner, engage in any occupation or business inconsistent with his duties as such commissioner.
Id. (for clarification, referred to herein as paragraph (b)). (Emphasis added).
¶ 3 Article IX, Section 16 prohibits a Commissioner from being "directly or indirectly . . . interested in any . . . pipe line."Id. In construing the language of Article IX, Section 16, several well established rules of interpretation must be followed. The provisions of the Oklahoma Constitution are construed using the usual rules of statutory construction.Cowart v. Piper Aircraft Corp., 665 P.2d 315 (Okla. 1983). The goal of statutory interpretation is to follow the intent of the Legislature, Fuller v. Odom, 741 P.2d 449 (Okla. 1987), and the cardinal rule of such interpretation is to determine the intent of the Legislature from the language set forth in the enacted statutes. Walker v. St. Louis San — Francisco Railroad Co.,671 P.2d 672 (Okla. 1983). In the absence of specific definitions, words used in the statutes must be given their ordinary, everyday meaning. Circle v. Jim Walter Homes, 654 F.2d 688 (10th Cir. 1981).
¶ 4 In ordinary, everyday usage the term pipe line denotes "a line of pipe connected to pumps, valves, and control devices for conveying liquids, gases, or finely divided solids." Webster's Third New International Dictionary 1722 (3rd ed. 1981). The term pipe line, as used in the first part of Article IX, Section 16, carries the same meaning. Since oil or gas is frequently conveyed through pipe lines, and by definition a Commissioner cannot be interested "in any . . . pipe line," id., a Commissioner is accordingly prohibited by paragraph (a), Article IX, Section 16 from being directly or indirectly interested in an oil or gas pipe line.
 1. The Direct or Indirect Interest Standard
¶ 5 Your first question raises the issue of what constitutes being directly or indirectly interested in any pipe line. While Article IX, Section 16, does not define the phrase "directly or indirectly interested," analogous "direct or indirect interest" language from other Oklahoma conflict of interest statutes[1] has been construed by several previous Attorney General Opinions.
¶ 6 The type of direct or indirect interest that disqualifies public officers from participating in "certain types of transactions is a `financial or pecuniary' interest." A.G. Opin. No. 85-138. An earlier Attorney General Opinion described the prohibition against a public officer owning a direct or indirect interest as a prohibition against a "private or personal interest of a financial or pecuniary nature." A.G. Opin. No. 79-267; seealso Baskin v. State ex rel. Short, 232 P. 388, 390 (Okla. 1925). The absence, however, of a public officer's ownership
interest in a certain transaction does not necessarily preclude the application of the direct or indirect interest standard, as a public officer can have a personal or pecuniary interest in a transaction without having an ownership interest. A.G. Opin. No. 83-119; A.G. Opin. No. 83-153.
¶ 7 Giving the phrase "directly or indirectly interested" its ordinary, everyday meaning it appears that the drafters of the constitution intended to prohibit a commissioner from being interested in any fashion in a pipe line, oil or gas or otherwise. This includes having an interest through a third person, e.g., a spouse or a child, or through a trust, blind or otherwise.
¶ 8 Whether a particular Commissioner is directly or indirectly interested in an oil or gas pipe line, that is, whether he has a pecuniary, personal, or ownership interest in an oil or gas pipe line, is a question of fact that cannot be answered by an opinion of the Attorney General. 74 O.S. 18b(e) (1991); see A.G. Opin. No. 85-138; A.G. Opin. No. 80-212; A.G. Opin. No. 79-267. We can conclude, however, that if a Commissioner is directly or indirectly interested in an oil or gas pipe line, whether by outright ownership or by other pecuniary or personal interest, the prohibitions of Article IX, Section 16 will apply.
 2. The Inconsistent Business Prohibition
¶ 9 While the direct or indirect interest prohibition of paragraph (a) of Article IX, Section 16, applies to a Commissioner's interest in pipe lines, including oil or gas pipe lines, that prohibition does not apply to all oil or gas activities. However, paragraph (b) of Article IX, Section 16 prohibits a Commissioner from engaging in a "business inconsistent with his duties as such commissioner," Article IX, Section 16, and the Corporation Commission's duties were expanded by the Legislature in 1917 to encompass the regulation of other oil and gas interests in addition to oil or gas pipe lines:
 All authority and duties now conferred upon the Corporation Commission or other departments of state government in reference to the conservation of oil and gas and the drilling and operating of oil and gas wells and the construction and regulation of oil and gas pipelines are hereby conferred exclusively upon the Corporation Commission.
17 O.S. 52 (1991).
¶ 10 To understand the prohibition, we must understand what constitutes a business inconsistent with the duties of a Commissioner. The Oklahoma Supreme Court has addressed that issue on three occasions. In Bond v. Phelps, 191 P.2d 938 (Okla. 1948), the Court was presented with the question of whether the Legislature could require the members of the Commission to prepare an annotated compilation of all oil and gas laws of Oklahoma and the general orders, rules and regulations adopted by the Commission. In dicta, the Court examined the meaning of inconsistent as used in Article IX, Section 16:
 We believe it clear that the word inconsistent as used in Article IX, Section 16 is intended to prevent the Commissioners from engaging in any occupation or business which might prevent the Commissioners from being perfectly impartial and fair as such. . . . It would be inconsistent with his duties as Commissioner for a Commissioner to hold stock in or be employed by a litigant before the Commission. It would not be inconsistent for him to run a poultry farm, leastwise, until the production of eggs is declared to be charged with public interest and thus require regulation.
Bond, 191 P.2d at 946. A Commissioner is prohibited from engaging in any business or occupation which might prevent the Commissioner from being perfectly impartial and fair.
¶ 11 In State v. Freeman, 440 P.2d 744 (Okla. 1968) (FreemanI), the Court articulated a general rule for determining inconsistency: a business activity which operates as an effective interference with a Commissioner's discharge of the functions of his office is inconsistent, and any activity affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction constitutes effective interference. The Court cited the language from Bond quoted above, and set forth the following standard:
 No rigid or inflexible formula can be prescribed for determining what constitutes engaging in an "inconsistent" occupation or business; but it may be stated as a general rule of guidance that if an occupation, business activity, or business activities, in which a Corporation Commissioner participates or with which he is connected, operates as an effective interference with the discharge of the functions of his office, he shall be deemed to be "engaged in an occupation or business inconsistent with his duties as such commissioner." Within the meaning of the general rule of guidance, any interest in any occupation, business activity, or business activities, which is affected in a meaningful manner by the Corporation Commission's exercise of its jurisdiction, constitutes such "effective interference."
Freeman I, 440 P.2d at 755.
¶ 12 The Court in State v. Freeman, 447 P.2d 782 (Okla. 1968) (Freeman II), characterized as an issue of fact whether one commissioner's interests in oil and gas properties rose to the level of a prohibited business activity:
 However, we are here concerned with the business activities of Jones and not with the general business of oil and gas production; and, under the rule announced above, the mere acquisition of oil and gas properties, does not, under all circumstances, constitute engaging in a business activity. . . . There is no yardstick for measuring what would constitute engaging in a "business activity." . . . The determination of such issues presents purely a question of fact.
Id. at 789.
¶ 13 Applying these standards as the trier of fact, the Court held that acquisition by Commissioner Freeman of significant oil and gas properties constituted engaging in a business activity affected in a meaningful manner by the Commission's exercise of its jurisdiction, and that by such ownership he had vacated or forfeited his office. Freeman II, 447 P.2d at 789. In the same case, the Court found that Commissioner Jones' ownership of small royalty and working interests did not constitute a business activity and that, even though the interests were affected by the exercise of the Commission's jurisdiction, they were not affected in a meaningful manner. Id.
¶ 14 This holding followed the Court's admonition in FreemanI that the ownership of stock in an oil or gas company or the acquisition of oil and gas properties by a Commissioner does not, under all circumstances, constitute engaging in an occupation or business inconsistent with the duties of a Commissioner; such ownership and acquisition may or may not be inconsistent with the duties depending upon the facts and circumstances. Freeman I at 755.
¶ 15 The clearest message from the Bond and Freeman cases is that ownership of oil and gas interests is not necessarily a violation of Article IX, Section 16, paragraph (b). It is a factual question. However, the cases provide few concrete guidelines for applying the law to the facts and for distinguishing between interests which are violative and those which are not.
 B. The Statutory Prohibition
¶ 16 In an apparent response to the decision in Freeman II,
the Legislature enacted a somewhat rigid and inflexible statutory prohibition against acts of Commissioners considered to constitute a conflict of interest in relation to the Commissioners' discharge of their duties.
 It shall be unlawful for any member of the Corporation Commission to own any interest in or to assist in the financing of any firm, corporation or business or to associate himself with any firm, corporation or business which is subject to regulation by the Corporation Commission or in which the influence of the Corporation Commission is used to benefit such business.
17 O.S. 179 (1991) (emphasis added).[2]
¶ 17 While 17 O.S. 179 has further narrowed the range of lawful Commissioner interests in Commission regulated oil and gas interests, it is still not a prohibition of the mere ownership of an oil or gas interest in the same fashion that paragraph (a) of Article IX, Section 16 specifically limits ownership of an interest in an oil or gas pipe line. It is the ownership of an interest in a "firm, corporation or business" subject to regulation by the Commission that is prohibited. 17 O.S. 179 (1991).
¶ 18 Although paragraph (b) of Article IX, Section 16 may leave some room for interpretation as to what constitutes a prohibited business activity for Commissioners, 17 O.S. 179 is less flexible. Nevertheless, 17 O.S. 179 is not all-encompassing.
¶ 19 17 O.S. 179 is a broad prohibition against ownership in, association with, or financing of any firm, business or corporation which is subject to regulation by the Commission or stands to benefit from the influence of the Commission. Commission regulation touches upon all kinds of oil and gas interests. It includes oversight of the conservation of oil and gas, the drilling and operating of oil and gas wells, and the construction and regulation of oil or gas pipe lines. 17 O.S. 52 (1991). With respect to the Commission's exercise of its jurisdiction, the standard of 17 O.S. 179 is more strict than the court's ruling in Freeman II, which dealt with an inconsistent business under paragraph (b), Article IX, Section 16. UnderFreeman II, the fact that an interest was affected by the exercise of the Commission's jurisdiction was not dispositive. The court looked to whether the interest was affected in a meaningful way. Freeman II at 789. The working interests of Commissioner Jones which were acceptable in Freeman II likely would not be allowed under 17 O.S. 179.
¶ 20 The prohibitions of 17 O.S. 179 run to a Commissioner's interest in a firm, corporation or business. The meaning of "business" in this context is less than clear. Some guidance can be found from going back to Freeman II, in which the court determined that not all mineral interest ownership constituted engaging in a business activity. The court said "the determination of such issues presents purely a question of fact."Id.
¶ 21 Given the broad scope of 17 O.S. 179 and the possibility of criminal penalties for its violation under 17 O.S. 180, a Commissioner is well-advised to consider carefully any interests which might fall within its prohibitions. It is also useful to note the admonition of the Oklahoma Supreme Court in this regard:
 Government officials and employees must exercise great care to avoid even the appearance of impropriety in their duties; for they, like Caesar's wife, must be above reproach.
Westinghouse Electric Corp. v. Grand River Dam Authority,720 P.2d 713, 717-718 (Okla. 1986).
 II. DIVESTITURE
¶ 22 In those instances in which a Commissioner involuntarily becomes directly or indirectly interested in an oil or gas pipe line, such as through inheritance, or engages in a business inconsistent with his duties, he must, in order to avoid Constitutional penalties, divest himself of that interest within a reasonable time. There is no provision for divestiture for one who acquires such interest or engages in such business voluntarily.[3] Article IX, Section 16 reads, in pertinent part:
 [I]f such Commissioner shall voluntarily become so interested, his office shall become vacant; and if any Corporation Commissioner shall become so interested otherwise than voluntarily, he shall, within a reasonable time, divest himself of such interest; and failing to do this, his office shall become vacant.
¶ 23 A Commissioner who involuntarily runs afoul of the Constitutional prohibitions is given a reasonable time in which to avoid a forfeiture of the office.
¶ 24 Statutorily, 17 O.S. 179 does not specifically mandate divestiture, but under that section it is unlawful to own any interest in a business regulated by the Commission. A person who violates 17 O.S. 179 can be found guilty of a misdemeanor and punished accordingly under 17 O.S. 180. Further, it is arguable that engaging in an activity prohibited by 17 O.S. 179 is also a violation of paragraph (b), the inconsistent business provision, of Article IX, Section 16.
¶ 25 The net effect of these provisions is that a person elected or appointed to the office of Corporation Commissioner must divest himself of prohibited interests prior to taking office, to avoid violation of 17 O.S. 179 and to avert a vacancy of the office under Article IX, Section 16. A Commissioner or Commissioner-elect is thus faced with the issue of what the term divest means as it is used in Article IX, Section 16.
¶ 26 The term divest is not defined anywhere in the statutes or the constitution, and no Oklahoma case has interpreted its meaning. One treatise defines divestment as any cutting short of an interest prior to its otherwise normal termination. Restatement of Property, Article IX, Section 16(b).
¶ 27 In antitrust law, divestiture normally requires a person to give up his interest in a commercial enterprise through the sale of the interest. U.S. v. Bonanno Organized Crime Family,683 F.Supp. 1411, 1447 (E.D.N.Y. 1988). Also in the antitrust context the United States Supreme Court has held that only a cash sale "will satisfy the rudiments of complete divestiture." UtahPublic Service Comm'n v. El Paso Nat'l Gas Co., 395 U.S. 464 at472 (1969). The dictionary definition of divest is "to dispossess or deprive especially of possessions, qualities, rights." Webster's Third New International Dictionary p. 663 (3rd ed. 1981).
¶ 28 Giving the term divest its plain, everyday meaning consistent with the above cases, it appears the Legislature intended for any impermissible interest to be sold in a cash sale.[4] Placing the pipe line interest or other oil and gas interest in a blind trust, or a trust over which the commissioner retains no control, would not satisfy the divestiture requirement.
¶ 29 Divestiture within a reasonable time is mandated for interests impermissible under Article IX, Section 16, which are acquired involuntarily. Divestiture prior to taking office is dictated as a practical matter for interests prohibited by 17 O.S. 179 of the statutes or Article IX, Section 16 in order to avoid vacancy of office and/or possible criminal penalties.
¶ 30 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. (A) Paragraphs (a) and (b) of Article IX, Section 16 of theOklahoma Constitution contain two different prohibitions inrelation to ownership of oil and gas interests. A CorporationCommissioner is prohibited by paragraph (a) of Article IX,Section 16(a), from being directly or indirectly interested in anoil or gas pipe line. The term pipe line, as it is used inArticle IX, Section 16(a), encompasses oil or gas pipe lines butdoes not include oil and gas activities in general. Consequently,the direct or indirect interest standard applies to oil or gaspipe lines but not to oil or gas activities in general. The typeof direct or indirect interest contemplated by Article IX,Section 16(a) is an ownership interest or an interest that ispersonal or pecuniary in nature. Whether a particularCommissioner is directly or indirectly interested in an oil orgas pipe line is a question of fact. If a Commissioner isdirectly or indirectly interested in an oil or gas pipe line,whether by ownership or by personal or pecuniary interest, theprovisions of Article IX, Section 16(a) will apply.
 (B) A Corporation Commissioner's interests in oil and gasactivities other than oil or gas pipe lines are limited by bothConstitutional and statutory provisions. Paragraph (b) of ArticleIX, Section 16, is a catch-all provision that prohibits aCommissioner from engaging in a business or occupationinconsistent with his duties. Title 17 O.S. 179 (1991) makes itunlawful for a Commissioner to own, finance, or associate withany firm, corporation, or business subject to regulation by theCommission. Engaging in this kind of unlawful activity under 17O.S. 179 can lead to penalties including a fine up to OneThousand Dollars and/or imprisonment for a period not exceedingone year, pursuant to 17 O.S. 180 (1991).
 2. A Corporation Commissioner who voluntarily becomes directlyor indirectly interested in an oil or gas pipe line or whovoluntarily engages in a business inconsistent with his duties asa Commissioner will be deemed to have vacated his office. Thereis no provision for divestiture of the prohibited interest. Toavoid vacancy, one must be rid of such interests prior tobecoming a Commissioner and abstain from acquiring them oncetaking office as a Commissioner. Further, a violation of theConstitutional provisions would constitute, in most instances, aviolation of 17 O.S. 179 (1991) which could result in criminalliability pursuant to 17 O.S. 180 (1991).
 A Corporation Commissioner who involuntarily becomes directlyor indirectly interested in an oil or gas pipe line or engages ina business inconsistent with his duties as a Commissioner mustdivest himself of such interest within a reasonable time or riskhis office becoming vacant. Giving the term divest its plain,everyday meaning, it appears the drafters of the Constitutionintended for any impermissible interest to be sold in a cashsale. Placing the pipe line or other interest subject toCommission regulation in a blind trust, or a trust over which theCommissioner retains no control, would not satisfy thedivestiture requirement.
SUSAN BRIMER LOVING Attorney General of Oklahoma
COOPER BRETT ROBINSON Assistant Attorney General
GAY ABSTON TUDOR Assistant Attorney General
[1] See Okla. Const. Art. X, § 11; 70 O.S. 1991, § 5-124[70-5-124]; 62 O.S. 1991, § 371[62-371]; 21 O.S. 1991, § 344[21-344].
[2] Section 180 of the same title provides that any person who "with wrongful intent" acquires such an interest or "actually uses" the influence of the Commission in violation of § 179 "shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished" by a fine or imprisonment. 17 O.S. 1991, § 180[17-180]. While mere ownership of a prohibited interest may not necessarily invoke the penalties of § 180, it is nevertheless unlawful under § 179.
[3] Although paragraph (b) of § 16 does not directly stipulate that a commissioner's office shall become vacant by engaging in a business inconsistent with his duties, the Oklahoma Supreme Court has read § 16 as a whole and applied this enforcement provision to both parts. Freeman II, 447 P.2d at 787, 789.
[4] For the purposes of this opinion, we are assuming a cash sale in an arm's length transaction. A nominal transfer to a child or spouse presents obvious questions outside the scope of this opinion.